J. S63010/16

2017 PA Super 52

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                v.           :
                                      :
MICHAEL ANTHONY ORLANDO,     :      No. 2505 EDA 2015
                                      :
             Appellant     :


Appeal from the PCRA Order, July 20, 2015,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0007180-2010


BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.


OPINION BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 28, 2017**

Michael Anthony Orlando appeals from the order entered in the Court of Common Pleas of Montgomery County that dismissed his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").

The PCRA court set forth the following:

> The charges against [appellant] arose out of a multicounty drug-ring investigation run by the Pennsylvania Attorney General's Office before a statewide investigating grand jury. The grand jury recommended charges against over a dozen alleged coconspirators. Pertinent to [appellant]'s present appeal, the grand jury's presentment made findings of fact as follows:
>
> > In August 2009, members of the Pennsylvania Office of Attorney General's Bureau of Narcotics Investigations and Drug Control Region II, Philadelphia

---

\* Former Justice specially assigned to the Superior Court.

Office, began an investigation into the distribution of cocaine and other controlled substances in and around Philadelphia, Delaware, Sullivan[,] and Montgomery counties, Pennsylvania, and southern New Jersey. The investigation revealed a multi-faceted drug trafficking enterprise that consisted of fourteen members operating in Philadelphia, Delaware, Sullivan, and Montgomery counties in Pennsylvania and Gloucester County New Jersey.

Investigators learned that William Gilkin supplied Scott Campanella and Richard Derosa with multi-ounce quantities of cocaine. Campanella and Derosa ultimately redistributed the cocaine through a criminal organization to individuals involved in the drug enterprise in Philadelphia, Montgomery, and Sullivan counties, Pennsylvania, and southern New Jersey.

. . . .

Based upon the interceptions and surveillance of Richard Derosa and others, agents identified seven individuals in Derosa's drug distribution network that involved individuals from Philadelphia, Delaware, and Montgomery counties in Pennsylvania.

The four [sic] individuals identified in Derosa's component of the cocaine distribution network include Shawn LeGrande, Scott Strader, Ricky Abate, and [appellant]. Investigation shows that from October 8, 2009[,] through December 6, 2009, Derosa supplied these individuals with quantities of cocaine ranging from multi-ounces to multi-grams.

PCRA court opinion, 12/21/15 at 1-2 (citations to the record omitted).

> The Grand Jury learned that [appellant] obtained multi-ounce quantities of cocaine from Richard Derosa at least three times during this investigation. On March 10, 2010, Agent Michael Kelly identified [appellant] as a customer of Derosa's based upon several intercepted calls and text messages between Derosa and [appellant].
>
> By way of example, Agent Michael Kelly testified that intercepted calls and text messages between Derosa and [appellant] on November 11, 2009, showed that [appellant] made arrangements to purchase two ounces of cocaine from Derosa. Furthermore, evidence shows that [appellant] provided the money to purchase the two ounces of cocaine to Derosa. Agent Kelly further testified that Derosa contacted Gilkin and ordered two ounces of cocaine and indicated that he would pick it up at Gilkin's residence. Intercepted calls show that Derosa was on his way to pick up [appellant] after leaving Gilkin's residence when members of the Philadelphia Police Department stopped and seized the suspected two ounces from Derosa's vehicle.
>
> . . . .
>
> [Grand Jury Presentment, 10/20/10, Findings of Fact at 1, 5, 15-16.]
>
> Based on the grand jury's presentment, the Attorney General's Office approved a police criminal complaint against [appellant], filed October 15, 2010 . . . attaching, adopting, and fully incorporating the grand jury's presentment as part of the affidavit of

probable cause. The complaint charged [appellant] with (A) four counts of the ungraded felony of delivering or possessing with intent to deliver cocaine, a Schedule II controlled substance, in or about July through December 6, 2009, in Philadelphia and Montgomery counties, in violation of 35 P.S. § 780-113(a)(30); (B) four counts of the felony of criminal conspiracy to do the same, in violation of 18 Pa.C.S.[A.] § 903; (C) two counts of the first-degree felony of engaging in corrupt organizations (through a pattern of racketeering activity as defined in 18 Pa.C.S.[A.] § 911(h)(1)) from July 2009 through December 6, 2009, "at various locations throughout Philadelphia[] and Montgomery [c]ounties, Pennsylvania" in violation of 18 Pa.C.S.[A.] § 911(b)(3), (4), respectively; (D) four counts of the first-degree felony of dealing in the proceeds of unlawful activity (money received in payment for cocaine), in violation of 18 Pa.C.S.[A.] § 5111(a)(1); and (E) four counts of the third-degree felony of criminal use of a communication facility, in violation of 18 Pa.C.S.[A.] § 7512.

. . . .

At a preliminary hearing scheduled for October 13, 2010, before a magisterial district judge, the Commonwealth withdrew the four counts of dealing in the proceeds of unlawful activity, and the remaining charges were waived over to Court. The Commonwealth filed a bill of information charging [appellant] with the remaining fourteen counts together with a notice pursuant to Pa.R.Crim.P. 582(B)(1) that they would be tried together with charges against seven of the other alleged coconspirators in the drug ring.

On the date set for trial, February 28, 2012, [appellant] appeared and pled guilty to one of the counts of possessing cocaine with intent to deliver and one count of corrupt organizations, and the Court granted the Commonwealth's motion to nol-pros the numerous other counts charged in the

- 4 -

original information. In a written colloquy he signed, and initialed on each page, [appellant] agreed to incorporate into the record the factual accusations from the police affidavit of probable cause, which included the grand jury's presentment. After an oral colloquy with [appellant] complying with Pa.R.Crim.P. 590 & cmt. that we found established his plea was knowing, intelligent, and voluntary, we also admitted this written colloquy into the record.

In addition, [appellant] pled guilty to a new felony of delivering a controlled substance that had just arisen the Friday before the Tuesday hearing on the plea. In the new case, police had arrested [appellant] in Philadelphia after he sold a substantial quantity of Oxycontin, a Schedule II controlled substance. The Commonwealth filed an amended bill of information charging a new violation of 35 P.S. § 780-113(a)(30), and, under a "global" agreement, [appellant] gave up his right to contest the new charge in Philadelphia and the Attorney General agreed to advise the Philadelphia District Attorney to withdraw the charges pending there.

*Id.* at 3-6.

Upon accepting [appellant]'s plea to the three charges (for which he was advised he could face up to thirty to sixty years in prison) the Court sentenced him to the agreed-upon three concurrent terms of three to six years' incarceration with credit for time served on each. We found [appellant] eligible under the Recidivism Risk Reduction Incentive Act (RRRI), 61 Pa.C.S.[A.] § 4505, calculating his minimum RRRI sentence as twenty-seven months. Pursuant to the agreement, we imposed no fine, but ordered the $5,950 "buy money" seized from [appellant's] person in the recent arrest forfeited to the Commonwealth.

[Appellant] did not appeal the judgment of sentence, but from November 2012 through January 2013 he filed a series of out-of-time pro se requests to reconsider and reduce the sentence nunc pro

tunc. We denied these requests, finding we no longer had the ability to reconsider the agreed sentence, but granted a separate motion [appellant] filed during the same period to represent himself pro se under **Faretta v. California**, 422 U.S. 806 (1975). . . .

On January 24, 2013, [appellant] filed a petition for relief under the PCRA, again stating he did not want a lawyer and asserting the right to proceed pro se. This time, after initial review, we, on February 21, 2013, sua sponte scheduled a video [**Commonwealth v.**] **Grazier** [713 A.2d 81 (Pa. 1998)] hearing for March 26, 2013, to determine whether [appellant's] waiver of his rule-based right to post-conviction counsel was knowing and voluntary. . . . After hearing, we found that [appellant] did not wish knowingly and voluntarily to waive counsel, and, on April 2, 2013, we appointed Francis M. Walsh, Esquire, to represent [appellant], giving counsel advance leave under Pa.R.Crim.P. 905(A) to file an amended petition for post-conviction collateral relief, if appropriate.

On February 4, 2014, Walsh filed an amended petition for post-conviction relief, which was subsequently served upon the Court. The amended petition raised two claims that [appellant's] counsel on the plea was ineffective. . . . The second issue[1] we believe can be fairly summarized thusly: (A) [Appellant] pled guilty to corrupt organizations with regard to his possessing with intent to deliver cocaine. (B) To be guilty of corrupt organizations a defendant must be involved in racketeering activity as defined in 18 Pa.C.S.[A.] § 911(h)(1), meaning he had to be involved with certain types of crimes. (C) Among the offenses that may constitute racketeering activity is violation of 35 P.S. § 780-113 "known as The Controlled Substance, Drug, Device and Cosmetic Act (relating to the sale and dispensing of narcotic drugs)," 18 Pa.C.S.[A.] § 911(h)(1)(ii).

---

[1] The first issue was disposed of by the PCRA court and is not before this court on appeal.

(D) Cocaine is not among the controlled substances the Act defines as a "narcotic," 35 P.S. § 780-102(b) . . . . (E) Because only narcotic drugs, under the Drug Act, are cognizable for racketeering activities, [appellant's] possessing with intent to deliver cocaine does not fall among the activities proscribed by 18 Pa.C.S.[A.] § 911 (relating to corrupt organizations) and therefore he should not have pled guilty to this charge. (F) [Appellant's] counsel was ineffective for allowing him to plead guilty to corrupt organizations when his prerequisite offense cannot be racketeering activity under the corrupt-organizations statute, 18 Pa.C.S.[A.] § 911. Counsel's amended petition asked the Court to vacate the judgments of sentence and discharge [appellant].

. . . .

At the hearing, [appellant] presented two witnesses: Assistant Public Defender Roberts and [appellant]. The Commonwealth's case consisted of cross-examining the witnesses.

We here highlight the pertinent portions of Mr. Roberts's testimony under questioning from Mr. Walsh on the issues raised in the amended petition (whether Roberts was ineffective for not . . . arguing delivery of cocaine was not a predicate offense of corrupt organizations/racketeering activity):

*Id.* at 9-11.

Q. Now, one of the charges was corrupt organizations; is that correct?

A. Yes.

Q. Okay. And are you familiar with the corrupt organizations statute?

> A.     That's a pretty lengthy one, but basically familiar with it.  It has been awhile since I looked at it.
>
> Q.     Okay.  Do you specifically recall one of the underlying crimes is the violation of the Control[led] Substance, Drug, Device and Cosmetic Act?
>
> A.     Yes.
>
> . . . .
>
> Q.     All right. . . .
>
>        . . . The act itself says – right after act, it has in parentheses, relating to the sale and dispensing of narcotic drugs.
>
>        Do you recall that?
>
> A.     Yes, sir.
>
> Q.     Did you ever talk to him about making a defense that cocaine is not a narcotic drug?
>
> A.     No, I didn't.

*Id.* 13-14, quoting notes of testimony, 9/18/14 at 8-9.

> The salient points of [appellant's] testimony on direct examination were that Roberts had never discussed corrupt organizations requiring the sale of narcotics and that [appellant] would not have pled guilty had the issue been presented to him with the argument that no relationship to Montgomery County could have been established without the corrupt organizations. . . .
>
> On July 20, 2015, we dismissed the post-conviction petition, and denied [appellant's] request for post-conviction relief.  A notice of appeal of our order followed on August 18, 2015, and was docketed in the Superior Court on August 25, 2015.

- 8 -

*Id.* at 18-20.

Appellant raises the following issue for this court's review:

1. WAS TRIAL COUNSEL INEFFECTIVE FOR PLEADING THE APPELLANT GUILTY TO CORRUPT ORGANIZATIONS WHERE THE ALLEGED PREDICATE OFFENSE OF POSSESSION WITH INTENT TO DELIVER COCAINE IS NOT A PREDICATE OFFENSE UNDER THE CORRUPT ORGANIZATIONS ACT?

Appellant's brief at 3.

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Dennis*, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. *Id.* at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived, *id.* § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[.]" *Id.* § 9543(a)(4).

*Commonwealth v. Treiber*, 121 A.3d 435, 444 (Pa. 2015).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." [*Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002)]. "A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective

assistance of counsel caused the defendant to enter an involuntary plea of guilty." ***Commonwealth v. Kersteter***, 877 A.2d 466, 468 (Pa.Super. 2005).

> We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA, 42 Pa.C.S.A. § 9543(a)(2)(ii). ***See*** [***Commonwealth v.***] ***Lynch***[, 820 A.2d 728, 732 (Pa.Super. 2003)]. "The voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Id.*** at 733 (quoting ***Commonwealth v. Hickman***, 2002 PA Super 152, 799 A.2d 136, 141 (Pa.Super. 2002)).

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326, 333 (Pa. 1999). Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id.*** The petitioner bears the burden of proving all three prongs of the test. ***Commonwealth v. Meadows***, 567 Pa. 344, 787 A.2d 312, 319-20 (2001).

> ***Commonwealth v. Johnson***, 868 A.2d 1278, 1281 (Pa.Super. 2005).
>
> ***Kersteter***, 877 A.2d at 469-69.  Moreover, trial counsel is presumed to be effective. ***Commonwealth v. Carter***, 540 Pa. 135, 656 A.2d 463, 465 (1995).

***Commonwealth v. Rathfon***, 899 A.2d 365, 369 (Pa.Super. 2006).

In the context of a plea, a claim of ineffectiveness may provide relief only if the alleged ineffectiveness caused an involuntary or unknowing plea. ***See Commonwealth v. Mendoza***, 730 A.2d 503, 505 (Pa.Super. 1999). "[A] defendant is bound by the statements which he makes during his plea colloquy." ***Commonwealth v. Barnes***, 687 A.2d 1163, 1167 (Pa. 1997) (citations omitted).  As such, a defendant may not assert grounds for withdrawing the plea that contradict statements made when he entered the plea.  ***Id.*** (citation omitted).

Here, appellant argues that had his counsel been effective, he would not have pled guilty to the corrupt organizations charge, 18 Pa.C.S.A. § 911. He argues that counsel was ineffective in that counsel did not advise him that the statute did not apply to him because cocaine is not a narcotic drug and corrupt organizations only applies to the sale and dispensing of narcotic drugs under The Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act") (relating to the sale and dispensing of narcotic drugs), 35 P.S. § 780-113.  We disagree that this interpretation is valid.

As set forth by the PCRA court:

The corrupt-organizations statute defines the "racketeering activity" required for a corrupt-organizations conviction, in part, as "[a]n offense indictable under [35 P.S. § 780-113] known as The Controlled Substance, Drug, Device and Cosmetic Act (relating to the sale, and dispensing of narcotic drugs)." 18 Pa.C.S. § 911(h)(1)(ii). Cocaine is not a "narcotic" as defined in the Drug Act, 35 P.S. § 780-102(b) (defining "narcotic"), but rather is listed elsewhere in the Act as a Schedule II controlled substance. 35 P.S. § 780-104(2)(i)(4) (defining cocaine and related substances as controlled substances under Schedule II).

Counsel focuses on the parenthetical reference in 18 Pa.C.S. § 911(h)(1)(ii) to the section of the Drug Act prohibiting illegal drug-related activity generally, 35 P.S. § 780.113 (encompassing all illegal controlled substances), that refers to that section as "relating to the sale and dispensing of narcotic drugs." 18 Pa.C.S. § 911(h)(1)(ii). Counsel denominates the quoted language a "proviso" to the statute and applies the rule of statutory construction of 1 Pa.C.S. § 1924, "Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer." (Br. Supp. Pet'r's Am. Post-Conviction Relief Act Pet. 10.) However, counsel offers no statutory analysis to show the parenthetical reference to the Drug Act in 18 Pa.C.S. § 911(h)(1)(ii) is a "proviso" to a "clause" rather than a mere "parenthetical reference" to a section of the Drug Act; and in fact 35 P.S. § 780-113 nowhere in its heading or extensive text, that we can see, contains the reference "relating to the sale and dispensing of narcotic drugs" that by the corrupt-organizations statute, 18 Pa.C.S. § 911(h)(1)(ii), supplies. (The statutory heading of section 780-113 reads simply, "Prohibited acts; penalties.")

PCRA court opinion, 12/21/15 at 38.

A review of the definitions set forth in 18 Pa.C.S.A. § 911(h)(1) shows

that many of the indictable acts constituting racketeering activity fall under

general and specific statutory sections. For instance, an act indictable under the Crimes Code can either include whole chapters of the Crimes Code or may be limited to only specific sections of a particular chapter. Section 911(h)(1) refers to an act which is "indictable under Chapter 29 (relating to kidnapping)." The title of the entire Chapter 29 is "Kidnapping." However, along with kidnapping, Chapter 29 includes such crimes as unlawful restraint, false imprisonment, and interference with the custody of children. Any of these offenses would also be indictable offenses under Section 911(h)(1). In contrast, Section 911(h)(1) refers to specific sections of the Crimes Code such as Section 2706 of Chapter 27, relating to terroristic threats. Chapter 27 includes other crimes such as recklessly endangering another person, which are not included under Section 911(h)(1). Similarly, had the General Assembly intended for Section 911(h)(1) to apply to only particular sections or schedules defined by 35 P.S. §780-104 of the Drug Act rather than the Drug Act as a whole, it would have so indicated.[2] The offense indictable under by the Drug Act is the unauthorized possession, sale, and distribution of controlled substances. 35 P.S. §780-113. Cocaine is a controlled substance under the Drug Act.

---

[2] We note that this court in **Commonwealth v. Hunter**, 768 A.2d 1136 (Pa.Super. 2001), and **Commonwealth v. Rickabaugh**, 706 A.2d 826 (Pa.Super. 1997), affirmed convictions for corrupt organizations that involved the selling of cocaine, a non-narcotic drug. However, these cases did not address head-on the issue presented here of whether selling non-narcotic drugs in conspiracy with others qualifies as racketeering activity.

As a result, this court agrees with the PCRA court that appellant failed to establish that his claim that he received ineffective assistance of counsel had arguable merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017