J-S18005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PRIMALFI FRONETA MORALES | : | |
| | : | |
| Appellant | : | No. 1648 MDA 2018 |

Appeal from the PCRA Order Entered August 29, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007549-2016

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS,* P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED: AUGUST 23, 2019**

Primalfi Froneta Morales appeals from the order that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Appellant is a native of the Dominican Republic who obtained legal status as a permanent resident of the United States.  On March 30, 2017, Appellant, with the assistance of an interpreter, pled guilty to delivering more than five grams of heroin and was sentenced to six to twenty-three months of imprisonment.[1]  At the conclusion of the plea/sentencing hearing, plea counsel

_____

[1] Although English is Appellant's second language, his counsel indicated that all of his conversations with Appellant had been in English, that Appellant speaks "fairly good English," that Appellant's wife was regularly present to assist in translation "if there were ever any issues of concern."  N.T. Plea & Sentence, 3/30/17, at 3.  As such, counsel believed that Appellant "very much

_____

*   Former Justice specially assigned to the Superior Court.

stated "for the record, we have had a discussion with respect to what I believe is the very real possibility of immigration consequences associated with this particular plea, and my client understands that . . . ."[2] N.T. Plea & Sentence, 3/30/17, at 8. His judgment of sentence became final on April 29, 2018, when he failed to file a direct appeal.[3]

Appellant filed a timely, counseled PCRA petition on March 28, 2018. Therein, Appellant claimed that his plea was not knowing and voluntary because (1) plea counsel failed to inform him that his conviction guaranteed his "removal from the United States, loss of Lawful Permanent Resident Status, and a lifetime bar from reentering the United States;" and (2) the trial court failed to conduct a plea colloquy that sufficiently assured that Appellant understood the immigration consequences of his plea. PCRA Petition, 3/28/18, at ¶ 7.

---

understood" the terms of the plea agreement. *Id*. Appellant, through the interpreter, indicated that counsel's representations were correct. *Id*.

[2] The trial court amplified counsel's statement about the impending immigration consequences of Appellant's conviction by concluding the hearing with the following: "Mr. Trump's watching. He's coming for you. Thank you. Good luck to you." N.T. Plea & Sentence, 3/30/17, at 8.

[3] *See* 42 Pa.C.S. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, **or at the expiration of time for seeking the review**.") (emphasis added). The PCRA court erroneously opined that Appellant's failure to file a direct appeal caused his judgment of sentence to become final on the day it was entered. *See* PCRA Court Opinion, 9/4/18, at 2.

The PCRA court held a hearing on the petition at which Appellant, his wife, and plea counsel testified. Appellant and his wife both testified that plea counsel never spoke with Appellant about the immigration consequences of his plea. N.T. PCRA Hearing, 7/23/18, at 9, 39. Appellant indicated that, had he known that he would have been automatically deported as a result of his plea,[4] he would have gone to trial, as his life is in danger in the Dominican Republic. *Id*. at 12. When confronted with plea counsel's representation at the close of the plea/sentencing hearing that Appellant was aware of the immigration consequences of his plea, Appellant acknowledged that he had failed to contradict counsel, but claimed that he "didn't understand what was going on that day," and that, although he had an interpreter, he "didn't understand the immigration issues too well." *Id*. at 19-20. However, he acknowledged that he did not ask plea counsel to be more specific in his opinions about immigration consequences. *Id*. at 20.

Plea counsel, on the other hand, testified that he repeatedly informed Appellant that deportation would be "a most likely consequence" of his conviction. *Id*. at 24-25. The Commonwealth further offered into evidence a letter plea counsel sent to Appellant that included the following:

---

[4] The parties stipulated that, if called to testify, immigration attorney Raymond G. Lahoud, Esquire, would have indicated that Appellant's conviction "under almost all circumstances" has "only one possible form of relief from automatic deportation," namely deferral or removal under the United Nations Convention Against Torture. Summary of Testimony of Raymond G. Lahoud, Esquire, 7/30/18, at 4.

As I have mentioned to you on several prior occasions, it is my belief that any plea to the existing criminal offenses will result in a felony conviction, a period of County incarceration and most likely future deportation proceedings. While the issue of deportation would be decided at a later venue, it is my opinion that a drug conviction of this nature would be extremely problematic with your efforts to maintain residence in this country. I base this upon your status as a permanent resident who was born in the Dominican.

*Id*. at 28. Plea counsel indicated that Appellant and his wife regularly responded to letters he sent to Appellant's mailing address, and that neither this letter, nor any correspondence mailed to Appellant, was returned as undeliverable. *Id*. at 26-27. Plea counsel also testified to the following. He tried to negotiate a plea that would not have carried adverse immigration consequences, but the Commonwealth refused. *Id*. at 25-26. He also informed Appellant that he "wish[ed] there was a way [he] could figure out where [Appellant] could stay in the country, but . . . if [Appellant went] to trial, [he was] going to get . . . a significantly worse sentence . . . and still be deported based upon the evidence that was available." *Id*. at 30. Even though they "talked about it and it was sad," plea counsel saw "no option or angle to pursue" to avoid deportation. *Id*. at 31.

The PCRA court credited the testimony of plea counsel, held that Appellant failed to establish that he was entitled to relief, and denied the petition by order of August 29, 2018. Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents this Court with the following questions:

- 4 -

1. Whether the PCRA court erred by failing to vacate the [Appellant]'s guilty plea and sentence, where his counsel failed to properly advise [Appellant] that his plea of guilty to this offense made him subject to virtually automatic and permanent deportation, where consequences of his guilty plea could easily have been determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect on the issue?

2. Whether The PCRA court erred by failing to vacate [Appellant]'s guilty plea and sentence, where the sentencing court failed to conduct a complete guilty plea colloquy, to insure that [Appellant]'s guilty plea was knowingly and voluntarily made; failed to insure that [Appellant] was aware of the immigration consequences of his guilty plea and sentence; and failed to insure that [Appellant] was aware that he, a Lawful Permanent Resident of the United States of America, would, as a direct consequence of the plea and sentence before this court, lose his Lawful Permanent Resident Status in the United States and be deported to his native country, with a permanent ban from any attempt to lawfully reenter the United States of America in any status?

Appellant's brief at 4-5 (unnecessary capitalization omitted).

We begin with a review of the applicable law. "This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Rizvi*, 166 A.3d 344, 347 (Pa.Super. 2017). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa.Super. 2012).

Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Becker*, 192 A.3d 106, 112

(Pa.Super. 2018). To do so, the petitioner must plead and prove (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any prong is fatal to the claim. *Id*. at 113. Further, "[i]n the context of a plea, a claim of ineffectiveness may provide relief only if the alleged ineffectiveness caused an involuntary or unknowing plea." ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa.Super. 2017).

We turn first to Appellant's claim that plea counsel was ineffective in failing to correctly advise him that deportation was a virtually-certain consequence of his guilty plea. Generally, "a defendant's lack of knowledge of collateral consequences of the entry of a guilty plea does not undermine the validity of the plea, and counsel is therefore not constitutionally ineffective for failure to advise a defendant of the collateral consequences of a guilty plea." ***Commonwealth v. Abraham***, 62 A.3d 343, 350 (Pa. 2012). However, the United States Supreme Court has recognized that, because changes in immigration law "have made removal nearly an automatic result for a broad class of noncitizen offenders," it is inappropriate "to divorce the penalty from the conviction in the deportation context" in considering the constitutional right to effective assistance of counsel. ***Padilla v. Kentucky***, 559 U.S. 356, 366 (2010). Accordingly, it held that "counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 374.

As detailed above, plea counsel in the instant case testified that he repeatedly advised Appellant that his plea not only carried a risk of deportation, but that deportation proceedings "most likely" would follow. The PCRA court accepted plea counsel's representations as true, and concluded that this advice was sufficient to comply with his duty under **Padilla**. **See** PCRA Court Opinion, 9/4/18, at 4.

Appellant argues that plea counsel's representations concerning the immigration consequences of his plea failed to satisfy **Padilla**. Appellant's argument is based upon the following language in the **Padilla** decision:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

**Padilla**, **supra** at 1483 (footnote omitted).

The immigration statute at issue in **Padilla**, the same one implicated by Appellant's plea, provides: "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for

one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i).

Contending that this statute provides clear consequences to Appellant's guilty plea to delivery of heroin, he argues that the information counsel provided to him was "misleading" and "incorrect." Appellant's brief at 26. Appellant argues as follows:

> Taken as a whole, it indicated at most that deportation may occur, possibly could occur, or was even likely; however, nowhere was [Appellant] advised that he was subject to automatic deportation, that the deportation statute commands deportation, that deportation for his conviction would be practically inevitable, and that upon his deportation [Appellant] would be barred from re-entry, all concepts articulated as accurate in the *Padilla* decision.

*Id*. at 26-27.

This Court rejected Appellant's argument in ***Commonwealth v. Escobar***, 70 A.3d 838, 840 (Pa.Super. 2013). In that case, "Escobar's counsel informed him it was 'likely and possible' that deportation proceedings would be initiated against him" prior to Escobar's entry of a guilty plea to possession with intent to deliver cocaine. *Id*. at 340. After deportation proceedings were initiated against him based upon his conviction, Escobar filed a PCRA petition claiming that his counsel had been ineffective in not properly advising him of the immigration consequences of his plea. The PCRA court agreed, holding Escobar's plea was invalid due to counsel's failure to supply sufficient advice. On appeal, this Court disagreed.

This Court "acknowledge[d] that parts of the **Padilla** opinion contain language arguably supporting the notion that plea counsel in some cases may have a duty to provide a rather certain indication of deportation." **Id**. at 842. However, elsewhere "the [C]ourt concluded that the statute clearly made Padilla '**eligible** for deportation' and that 'his deportation was **presumptively** mandatory.'" **Id**. at 842 (quoting **Padilla**, **supra** at 1483) (emphasis added in **Escobar** decision). Further, the express holding of **Padilla** is limited to stating that counsel must inform a defendant whether the "'plea carries a risk of deportation.'" (quoting **Padilla**, **supra** at 1486).

Therefore, this Court reversed the grant of PCRA relief to Escobar, explaining as follows:

> We do not agree that giving "correct" advice necessarily means counsel, when advising Escobar about his deportation risk, needed to tell Escobar he definitely would be deported. It is true that 8 U.S.C. § 1227(a)(2)(B)(i) does lead to the conclusion that Escobar's PWID conviction certainly made him **deportable**. However, whether the U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out Escobar's actual deportation was not an absolute certainty when he pled. Given that Escobar did know deportation was possible, given that counsel advised him there was a substantial risk of deportation, and given that counsel told Escobar it was likely there would be deportation proceedings instituted against him, we find counsel's advice was, in fact, correct.

**Id**. at 841 (emphasis in original).[5]

---

[5] By contrast, although Padilla had pled guilty to possession of a large amount of marijuana, his counsel not only failed to make him aware of the implications of 8 U.S.C. § 1227(a)(2)(B)(i) on his plea, but advised Padilla that "he did not

In the instant case, plea counsel's advice was no less correct than that provided in *Escobar*. He informed Appellant that deportation would be "a most likely consequence" of his plea, that the conviction would result in "most likely future deportation proceedings," and that it "would be extremely problematic with your efforts to maintain residence in this country." N.T. PCRA Hearing, 7/23/18, at 24-25, 28. Given that even Appellant's immigration expert opined that deportation would result from his conviction in "**almost** all circumstances," Summary of Testimony of Raymond G. Lahoud, Esquire, 7/30/18, at 4 (emphasis added), plea counsel's advice to Appellant was, in fact, correct. As such, we have no reason to disturb the PCRA court's denial of Appellant's *Padilla*-based claim.

With his remaining issue, Appellant claims that his plea was involuntary because the trial court did not ensure that Appellant understood that he would be deported as a result of the plea. Appellant's brief at 30-31. Appellant properly acknowledges that the issue of whether a plea colloquy must include inquiry into the defendant's understanding of the immigration consequences of his plea was before this Court in *Commonwealth v. Rachak*, 62 A.3d 389 (Pa.Super. 2012), and was not resolved in Appellant's favor. In that case, Rachak waived his right to counsel and pled guilty to drug offenses. He later filed a PCRA petition in which he claimed his plea was not knowing and

have to worry about immigration status since he had been in the country so long." *Padilla v. Kentucky*, 559 U.S. 356, 359 (2010).

voluntary because he was unaware of the immigration consequences of his plea. The PCRA court denied relief on the bases that it is not the trial court's responsibility to determine a defendant's immigration status when accepting a plea, and the trial court's colloquy of Rachak covered all areas mandated by Pa.R.Crim.P. 590. *Id*. at 391.

While this Court concluded that Rachak waived a challenge to the voluntariness of his plea by not pursing it on direct appeal, we alternatively held that the PCRA court opinion "accurately addressed every facet of [Rachak]'s petition, correctly explained the inapplicability of the United States Supreme Court's decision in *Padilla* . . . ," and affirmed the denial of PCRA relief on the basis of the PCRA court's opinion. *Id*. at 391-92. *See also id*. at 395 (reproducing the PCRA court opinion) ("While the United States Supreme Court has recognized that lawyers have a responsibility to inform clients of potential immigration consequences before entering a guilty plea, it has not, as of this date, placed the same responsibility on the courts.").

Appellant attempts to distinguish *Rachak* by citing Rachak's *pro se* status and noting that the trial court in the instant case was aware that Appellant was from the Dominican Republic. *See* Appellant's brief at 31-33. We are not persuaded that a different result is warranted. First, Appellant does not explain why this claim is not waived for failure to raise it on direct appeal. *See Rachak*, *supra* at 391 ("While Appellant focuses on the voluntariness of his guilty plea, that issue should have been raised on direct

appeal; it was not. Therefore the issue is waived.") (footnote omitted) (citing 42 Pa.C.S. § 9543(a)(3)). Moreover, the facts that Appellant was represented by counsel at his plea hearing, that counsel advised the court that Appellant was aware of the immigration consequences of the plea, and that Appellant did not contradict counsel, offer less reason for the court to have conducted an immigration-related colloquy than was present in *Rachak*. Hence, even were the issue not waived by his failure to raise it on direct appeal, Appellant has offered no authority to support his claim that the trial court had an obligation to inquire into his awareness of the immigration consequences of his plea under any circumstances.

Therefore, because Appellant has failed to meet his burden of convincing this Court that the PCRA court erred and that relief is due, we affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2019

- 12 -