J-S45013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRELL MAURICE WILKINSON JR. | : | |
| | : | |
| Appellant | : | No. 900 MDA 2025 |
| | : | |

Appeal from the PCRA Order Entered June 10, 2025
In the Court of Common Pleas of Cumberland County
Criminal Division at No: CP-21-CR-0002279-2022

BEFORE:  STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED: APRIL 20, 2026**

Appellant, Terrell Maurice Wilkinson, Jr., appeals from the order entered on June 10, 2025, by the Court of Common Pleas of Cumberland County dismissing his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

Following a jury trial in 2023, Appellant was convicted of two counts of indecent assault.  Appellant and the victim had been friends since elementary school.  On September 27, 2019, Appellant was spending time with the victim at her parents' house while she was home from college.  The victim fell asleep on one end of the couch while Appellant was on the opposite end.  She woke up to Appellant's hand under her shirt, touching and rubbing her nipple.  She

_____

[*] Retired Senior Judge assigned to the Superior Court.

did not say anything to Appellant and went to her bedroom to sleep. The victim did not report the incident to police until July 2022.

On April 25, 2023, Appellant was sentenced to an aggregate 6 to 23 months imprisonment, followed by one year of supervised probation. Appellant was classified as a Tier II sexual offender and is subject to the registration requirements of the Sexual Offender Registration and Notification Act ("SORNA"). This Court affirmed his judgment of sentence. *See Commonwealth v. Wilkinson*, 2024 WL 1268519 (Pa. Super. filed March 26, 2024) (unpublished memorandum). Our Supreme Court denied allowance of appeal on October 1, 2024.

On October 3, 2024, Appellant filed a counseled PCRA petition. In it, he argued trial counsel was ineffective in failing to cross-examine the victim: (1) using all the text messages she sent to a third-party, Martin Thompson-Riggins, during the time she initially reported that the assault occurred; and (2) about her continued relationship with Appellant after the assault utilizing the text messages between the two parties. He further argued that the cumulative errors of trial counsel's ineffectiveness deprived him of a fair trial.

A PCRA hearing was held on February 7, 2025, wherein Appellant presented the testimony of Thompson-Riggins, trial counsel and himself. The parties submitted post-hearing briefs. The PCRA court dismissed Appellant's petition on June 10, 2025. This timely appeal followed. Appellant raises the following issues for our review:

1. Whether trial counsel was effective in failing to adequately cross-examine the accuser using all of the text-messages she sent to another male friend during the time period of the alleged incident where the messages were not hearsay because they were not being introduced for the truth of the actual messages[.]

2. Whether trial counsel was effective in failing to adequately cross-examine the accuser about her continued relationship with [Appellant] and using text messages that she sent to [Appellant] after the alleged incident to impeach the credibility of the accuser[.]

3. Whether the cumulative errors of trial counsel in this matter were so significant that they deprived [Appellant] of a fair trial in violation of his due process rights and his state and federal constitutional right to a fair trial[.]

Appellant's Brief, at 7.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *See e.g., Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (internal citations omitted).

In Pennsylvania, counsel is presumed to have rendered effective assistance. *Commonwealth v. Orlando*, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by

a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. *Id.* "Arguable merit exits when the factual statements are accurate and could establish cause for relief." *Commonwealth v. Urwin*, 219 A.3d 167, 172-73 (Pa. Super. 2019).

It is well-established that

> [a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 706-07 (Pa. Super. 2013) (internal citations and quotation marks omitted).

If a petitioner fails to satisfy any one of the three prongs, the claim fails. *Orlando*, 156 A.3d at 1281. "Counsel will not be found ineffective for failing to raise a meritless claim." *Commonwealth v. Brown*, 196 A.3d 130, 151 (Pa. 2018).

- 4 -

Appellant's first ineffectiveness claim is that trial counsel failed to adequately cross-examine the victim "with text messages that she sent during the period in which the crime purportedly happened." Appellant's Brief at 16.

Initially, the victim told police that the assault occurred either a little before or just after midnight. N.T. Trial, 1/26/23, at 71. At the preliminary hearing, however, defense counsel questioned the timing of the assault because she was texting with Thompson-Riggins, from 10:55 p.m. on September 27, 2019, until 12:47 a.m. on September 28, 2019. *See* N.T. PCRA Hearing, 2/7/25, at 50-51; Defendant's Exhibit 1.

During trial she testified that the assault occurred "after midnight, around 1:00 or 2:00 a.m., probably around 2:00. It could have even been later." N.T. Trial, 1/26/23, at 37. Defense counsel questioned her regarding the discrepancy in her preliminary hearing and trial testimony:

Q:    So previously when you had talked about this when you said a little before midnight or a little after midnight[,] you were incorrect?

A:    I don't believe I – did I say that?

Q:    You said that previously.

A:    I must have been – I apologize. I know that for sure it was definitely midnight or after. But it was not before that. We were not going to bed early.

* * * *

Q:    Do you remember telling [Detective Goodrow] that you fell asleep either a little bit before midnight or just after midnight?

A:   I don't recall exactly what I stated.  It's been about a year.  But if you say that[,] and that's what he wrote down[,] I'm going to say that, yes, I would have said that.

Q:   And do you agree with me at the preliminary hearing that you were just asked about that you testified to that same thing?

A:   I would not, no.  I remember testifying at the preliminary hearing that it would have been after midnight.  I didn't specify specifically right around midnight, but I recall saying it was after midnight.

*Id.* at 37, 46-47.  Appellant also called Detective Goodrow in his case-in-chief, who testified that the victim initially told him that the assault occurred "right before midnight or right after midnight[.]"  *Id.* at 71.

Appellant claims that "trial counsel wanted to and intended to cross-examine the accuser with text messages that she sent to Martin Thompson-Riggins[,] . . . [b]ut upon a hearsay objection, trial counsel abandoned using the verbatim text messages to cross-examine the accuser."  Appellant's Brief, at 18.  He claims counsel was ineffective because:

> While trial counsel attempted to connect the dots in his closing statement, his failure to go through the extensive messages that the accuser was sending to Thompson-Riggins and the specific timing of each of the message exchanges significantly weakened the defense.  **Had counsel gone through the timing of each of the messages, he would have established via actual evidence that the accuser's initial report to police was wrong** since she could not have been asleep and been groped while sleeping and simultaneously sending text messages to another friend – and that she changed her story about the timing of the alleged incident only after it became evident that she could not have been asleep when she claimed.
>
> In a case where the alleged victim did not come forward for over three years and remained close personal friends with [Appellant] for a period after the incident, trial counsel's tepid and minimal

- 6 -

cross-examination concerning the discrepancy in the timing of the accuser's accounts caused actual prejudice.

*Id.* at 20 (citation omitted; emphasis added).

This claim fails as counsel had a reasonable trial strategy to not introduce the messages between the victim and Thompson-Riggins. During the PCRA hearing, trial counsel explained that he never intended to introduce the messages. N.T. PCRA hearing, 2/7/25, at 29. "The content was relatively irrelevant. . . . It was more about the timing of the messages and the length of the conversation that went against her original story of when this allegedly happened." *Id.* That point was made at trial.[1] In light of the foregoing, we cannot conclude that an alternative strategy, *i.e.*, admitting and/or reading the messages verbatim, offered a potential for success substantially greater than the strategy pursued, *i.e.*, highlighting the fact that the victim was texting during the time she initially said the assault occurred. *See Stewart*, *supra*.

Even if counsel's strategy was not reasonable, Appellant failed to prove he was prejudiced by counsel's inaction. The victim testified that she did not recall texting Thompson-Riggins on the night in question. N.T. Trial, 1/26/23,

_____

[1] To the extent Appellant argues that trial counsel was ineffective by failing to impeach the victim with her testimony from the preliminary hearing, this issue is waived. Appellant failed to raise this issue in his Rule 1925(a) statement and cannot raise it for the first time on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Scott*, 952 A.2d 1190, 1191 (Pa. Super. 2008) (holding issues not raised in a Rule 1925(b) statement are waived).

at 40. Therefore, she would have been unable to authenticate the text messages, a prerequisite to admitting them at trial. **See** Pa.R.E. 901(b)(11); **Commonwealth v. Murray**, 174 A.3d 1147, 1156-57 (Pa. Super. 2017). Instead, defense counsel provided the messages to the victim to refresh her recollection. N.T. Trial, 1/26/23, at 40-41.

After refreshing her recollection, defense counsel used the messages during cross-examination. The victim testified that she and Thompson-Riggins were texting from 10:55 p.m. to 12:47 a.m. the night in question. **Id.** at 41-42. The two were discussing an upcoming Halloween party, who would be going together and costume planning. **Id.**

Counsel attempted to read a message verbatim, but was cut off by the trial court because he was not using the evidence to refresh the victim's recollection. **Id.** at 42. Counsel then attempted to ask the victim, "after having your recollection refreshed do you remember the last text message that you sent to [Thompson-Riggins]?" **Id.** at 43. The Commonwealth objected on hearsay grounds. The trial court sustained the objection, but not because it was hearsay. The objection was sustained because counsel was attempting to use the messages as substantive evidence, not to refresh the victim's recollection.[2] **Id.** at 43.

---

[2] "If the witness's memory on the stand is inadequate, the witness may be shown an item in an effort to jog the witness's memory. The witness must then put the item aside, and if the witness's memory is refreshed, the witness may then testify from memory." **Commonwealth v. Harbold**, 2021 WL 2933141 at *5 (Pa. Super. filed July 12, 2021) (unpublished memorandum) (citing **Commonwealth v. Payne**, 317 A.2d 208, 210 (Pa. 1974).

We fail to see how going through each individual message at trial, to show the timing of each message, would have provided additional evidence that the victim was texting with Thompson-Riggins during the time she initially told police the assault occurred. The victim admitted as much.

As Appellant failed to prove all three prongs of the ineffectiveness test, he is not entitled to relief on his first claim of ineffectiveness.

Appellant's second ineffectiveness claim is that trial counsel failed to adequately cross-examine the victim regarding her continued relationship with Appellant after this incident and failed to utilize text messages between them to impeach her credibility. *See* Appellant's Brief, at 23-24. "These messages were impeachment evidence because they show that after the alleged incident, [the victim] not only remained close friends with [Appellant], but also that he stayed over at her house on subsequent occasions, and she invited him to attend parties and was excited to hang out with him." *Id.* at 24.

This claim fails as trial counsel had a reasonable strategy to not question the victim about her continued relationship with Appellant. The victim testified that the assault occurred in 2019, but she did not report it to law enforcement until 2022. She told two friends within a year of the incident, neither of whom were working in law enforcement. On direct examination, the victim explained that she never confronted Appellant about what happened because:

> I was very sacred of losing – he was one of my first what I thought real friends that I had in my friend group that I was really afraid

of losing if I didn't just brush it away and just pretend that it didn't happen.

N.T. Trial, 1/26/23, at 31. There was no further testimony about why and when the victim decided to report what happened to law enforcement.

During the PCRA hearing, trial counsel explained that his trial strategy was to attack the victim's initial timeline of when the assault happened. He did so by highlighting the discrepancy in her preliminary hearing and trial testimony regarding the timing. He also called the detective as a witness to state when the victim initially said the assault occurred.

Trial counsel testified that it was not his defense strategy to show the jury that the victim maintained her friendship with Appellant for a period after this incident. N.T. PCRA Hearing, 2/7/25, at 32. Counsel explained that he explored that line of questioning during the preliminary hearing and it elicited information that was harmful to Appellant:

> [W]hat [the victim] said at the prelim was that when she had heard of the [two] other accusers, that's when she decided it was time to come forward. So the conversation was, obviously, those other two accusations would otherwise not be admissible at trial.
>
> But what the conversation was if I go down that road and start to ask her, you know, basically why didn't you say anything two years earlier or you remained friends with him for two years was going to open the door for [the Commonwealth] to then start asking about that time frame as well and why she eventually did come forward. And we didn't want that answer to be I had heard other people come forward saying that this had happened to them as well.

*Id.* at 41-42. As a result, trial counsel decided not to question the victim about her continued friendship with Appellant.

- 10 -

On appeal, Appellant contends that trial counsel's stated strategy was not reasonable because the Commonwealth would not have been permitted to introduce evidence relative to the other accusers because it did not file notice pursuant to Pa.R.E. 404(b)(3). That is not an accurate statement of the law.

Generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). To be admissible, the probative value of the evidence must outweigh its potential for unfair prejudice. *Id.* If the Commonwealth intends to introduce such evidence, it "must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it[.]" Pa.R.E. 404(b)(3).

There is a limited exception to Rule 404(b). "A litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." *Commonwealth v. Kearney*, 341 A.3d 774, 783 (Pa. Super. 2025) (citation omitted). "The phrase 'opening the door' . . . by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area." *Id.* (citation omitted).

- 11 -

Accordingly, we conclude that trial counsel has a reasonable strategic basis for not cross-examining the victim about her continued relationship with Appellant after the incident. Had counsel asked the victim about her continued relationship, it would have opened the door for the Commonwealth to ask about her decision to finally come forward to police, and elicit testimony of Appellant's other bad acts, *i.e.*, the other allegations of sexual misconduct. Because Appellant failed to prove the reasonable basis prong, we need not address the remaining prongs. **See Orlando**, **supra**. No relief is due on his second claim of ineffectiveness.

Since we conclude that trial counsel was not ineffective, Appellant's claims cannot collectively afford relief. "It is well settled that no number of failed claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Bomar**, 104 A.3d 1179, 1216 (Pa. 2014) (citation and quotations omitted).

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/20/2026

- 12 -