J-S31016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JEREMY JONATHAN BLYSTONE | |
| Appellant | No. 1345 WDA 2018 |

Appeal from the PCRA Order Dated September 4, 2018
In the Court of Common Pleas of Armstrong County
Criminal Division at No.: CP-03-CR-0000354-2015

BEFORE:  OLSON, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.:              **FILED  SEPTEMBER 26, 2019**

Appellant Jeremy Jonathan Blystone appeals from the September 4, 2018 order entered in the Court of Common Pleas of Armstrong County ("PCRA court"), which denied his request for collateral relief under the Post Conviction Relief Act (the "PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

The facts and procedural history of this case are uncontested.[1]  On February 13, 2015, at approximately 1:34 p.m., Appellant was driving his vehicle on State Route 56.  He turned left into the driveway of the residence of his passenger Lisa Culp ("Ms. Culp").  This turn placed him in front of another vehicle traveling the opposite direction on State Route 56 driven by Thomas Pater ("Pater"), with Joseph Keibler ("Keibler") as passenger.  The

---

[1] Unless otherwise noted, these facts are taken, largely verbatim, from the PCRA court's September 4, 2018 opinion.  *See* PCRA Court's Opinion, 9/4/18 at 1-9.

two vehicles collided nearly head-on. Eyewitness Donna Casale testified that she observed Appellant exit the vehicle after the collision. Ms. Culp told Patrolman Ponteri, the officer who arrived on the scene, that Appellant was the driver of the vehicle and that he "ha[d] been drinking all day." Patrolman Ponteri determined that Appellant had fled the scene of the accident on foot. Pater and Keibler were extricated from their vehicle; Pater was transported to Forbes Regional Hospital in Monroeville and was pronounced dead on arrival from injuries sustained during the accident. Keibler was transported to UPMC Presbyterian Hospital in Pittsburgh for his injuries. Ms. Culp was sent to Forbes Regional Hospital for her injuries.

Later that same day, at 4:11 p.m., police apprehended Appellant after he was observed leaving the Central Restaurant and Bar in Apollo Borough. He was seen getting into a vehicle and was apprehended during a routine traffic stop; police observed a "strong odor of [a]lcoholic [b]everages coming from his person, red bloodshot and glassy eyes and slurred speech."

Following his arrest, Appellant was transported to Allegheny Valley Hospital in Natrona Heights, Pennsylvania. Officers read Appellant the PennDot DL-26 form, which he refused to sign. He also refused to submit to chemical testing. Shortly after his initial refusal, Appellant "advised that he was willing to submit to a blood test." Corporal Robbins of the Pennsylvania State Police read the PennDot DL-26 again and the first blood draw took place at 6:20 p.m. A second blood draw, pursuant to a search warrant, was performed at Armstrong County Memorial Hospital at 7:36 p.m. Through

chemical testing, it was determined that Appellant had a blood alcohol content ("BAC") of 0.213%. As a result, Appellant was charged with multiple motor vehicle code offenses, including homicide by vehicle while driving under the influence, aggravated assault with vehicle while driving under the influence, driving under the influence of alcohol, and vehicle turning left.[2]

A preliminary hearing was held on April 25, 2015 before Magisterial District Judge Andring, at which Donna Casale, an eyewitness, Ms. Culp, and Sergeant Christian Disciscio testified. Appellant was represented by counsel, attorney Michael Worgul ("Attorney Worgul") of the Worgul Law Firm. Ms. Casale testified that she observed Appellant exit the vehicle after the crash. She also testified that she was unable to remain at the scene because she would be late for work and that Officer Ponteri would obtain her statement later.

Ms. Culp testified that she received a telephone call from Appellant between 10:00 a.m. and 11:00 a.m. on the day of the accident. He told her that he was very upset because of an issue he was having with his girlfriend. Appellant told Ms. Culp that he was then in a vehicle parked in the parking lot of the Six Pack bar, drinking a beer. Appellant asked Ms. Culp for permission to come to her house to "clear his head," to which she acceded.

Ms. Culp further testified that Appellant arrived at her house about 10 or 15 minutes later, driving his girlfriend's SUV. Ms. Culp stated that he was

---

[2] 75 Pa.C.S.A. §§ 3735(a), 3735.1(a), 3802(c) and 3322, respectively.

very upset upon his arrival. She testified that between 11:30 a.m. and 1:00 p.m. "he did have a couple of drinks at my house, like two and a half that I'm aware of . . . [i]t was spiced rum."

Sergeant Disciscio testified that Appellant was not at the scene when he arrived, but soon after, information was received that he was minutes away in the Central Bar & Grill in Apollo Borough. He further testified that the bartender at the Central Bar gave him a statement about Appellant's consumption of alcohol while there. According to the bartender's statement, Appellant consumed "a large Coors draft, a shot of tequila, and then ordered a second shot, which was Jack Daniels." The bartender further stated that "at that point they had seen sufficient outward signs that [Appellant] was an intoxicated person, and that they actually shut him off, and told him they would no longer serve him alcohol." Sergeant Disciscio went on to recount the events of Appellant's arrest and the two blood draws that took place after that. All charges were held for court.

On April 11, 2016, the day of trial, Appellant pleaded guilty to homicide by vehicle while DUI, aggravated assault with vehicle while DUI, DUI (alcohol), and vehicle turning left. On June 28, 2016, Petitioner was sentenced to the following: (1) on the charge of homicide by vehicle DUI to incarceration for a term of not less than five years and no more than ten years; (2) on the charge of aggravated assault with vehicle while DUI to incarceration of not less than four years and not more than eight years; to run consecutively to the homicide by vehicle while DUI charge; (3) on the charge of DUI (alcohol) to

incarceration of not less than seventy-two hours and not more than six months, to run consecutively to the homicide by vehicle while DUI charge; (4) on the charge of vehicle turning Left, no further penalty was assessed. Appellant did not file a direct appeal.

On April 17, 2017, Appellant *pro se* filed a petition for PCRA relief, raising a claim for ineffective assistance of counsel with respect to his guilty plea. The PCRA court appointed counsel, who filed an amended petition on December 15, 2017, asserting that Appellant's trial counsel was ineffective for failing to file an omnibus pretrial motion for purposes of suppressing or excluding the results of Appellant's BAC test.[3]

On March 15, 2018, the PCRA court conducted a hearing, at which Attorney Worgul, Attorney Matthew Ness and Appellant offered testimony. Appellant testified that every time he met with Attorney Worgul, he would make a request for a pretrial motion and would receive a response indicating that "they are working on it, or you know, it was in the works, basically, is how he would speak of it." N.T. PCRA Hearing, 3/15/2018, at 30-31. While Attorney Ness, Worgul's partner, was unable to recall specifically whether Appellant requested that counsel file pretrial motions, Attorney Worgul and Attorney Ness both testified that any pretrial motion regarding Appellant's BAC would not be successful.

---

[3] In particular, Appellant claimed that he wanted trial counsel to file a motion to suppress, motion *in limine* and a *habeas* motion to exclude the BAC test results.

- 5 -

Attorney Worgul testified that, to the best of his recollection, he and Ness did not believe Appellant had a valid motion to suppress due to Appellant's consent to the initial blood draw. **See** N.T. PCRA Hearing, 3/15/2018, at 71. Attorney Worgul further testified that he did not consider filing a motion *in limine* on the BAC level because it was relevant evidence, and his argument would instead question the weight of the evidence rather than the admissibility. **Id.** at 73. Attorney Ness testified that because Appellant would testify that he started drinking only after the accident, and because their defense strategy centered on this argument, they believed suppression of the BAC evidence was unnecessary.

Following the hearing, on September 4, 2018, the PCRA court denied Appellant relief, because his ineffectiveness claim lacked merit. Appellant timely appealed.[4]

On appeal, [5] Appellant raises a single issue for our review:

I.    Where counsel failed to file a pretrial motion seeking the exclusion of certain evidence of [Appellant's] intoxication, despite the existence of meritorious grounds therefor, and where intoxication was a key element of the most serious charged offenses, was [Appellant's] right to effective assistance of counsel violated:

Appellant's Brief at 8.

---

[4] The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[5] "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (quoting **Commonwealth v. Rainey**, 928 A.2d 215, 223 (Pa. 2007)).

Appellant's sole claim before us involves ineffective assistance of counsel. Appellant argues that his trial counsel was ineffective because he failed to file a motion *in limine* or a motion to suppress for purposes of excluding results of his BAC test. Appellant's Brief at 17-22. Appellant asserts that "[h]ad this evidence been excluded there would have been scant evidence of [Appellant's] intoxication at the time of the accident. . . . [and Appellant] would have then been in an informed position to enter into a plea agreement or to decide to go to trial." ***Id.*** at 28. Appellant claims that his guilty plea was not knowing, voluntary and intelligent because of his counsel ineffectiveness.

A PCRA petitioner is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." ***Commonwealth v. Koehler***, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "A

petitioner must prove all three factors of the "***Pierce***[6] test," or the claim fails." ***Id.*** Put differently, "[t]he burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Chmiel***, 889 A.2d 501, 540 (Pa. 2005).

"In the context of a plea, a claim of ineffectiveness may provide relief only if the alleged ineffectiveness caused an involuntary or unknowing plea." ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017) (citations omitted); ***see Commonwealth v. Johnson***, 875 A.2d 328, 331 (Pa. Super. 2005) (explaining that when asserting a claim of ineffectiveness of counsel in the context of a guilty plea, a defendant must show that plea counsel's ineffectiveness induced him to enter the plea), ***appeal denied***, 892 A.2d 822 (Pa. 2015). Thus, we preliminarily must determine whether Appellant's guilty plea was valid.[7]

To be valid, a plea must be voluntary, knowing, and intelligent. ***Commonwealth v. Persinger***, 615 A.2d 1305, 1307 (Pa. 1992). To ensure these requirements are met, Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a trial court conduct a separate inquiry of the defendant before accepting a guilty plea. It first requires that a guilty plea be offered in open court. The rule then provides a procedure to determine whether the plea is voluntarily, knowingly, and intelligently entered. As the

_____

[6] ***Commonwealth v. Pierce***, 527 A.2d 973 (Pa. 1987).

[7] When a defendant enters a guilty plea, he waives his "right to challenge on appeal all non-jurisdictional defects except the legality of [his] sentence and the validity of [his] plea." ***Commonwealth v. Pantalion***, 957 A.2d 1267, 1271 (Pa. Super.2008).

- 8 -

Comment to Rule 590 provides, at a minimum, the trial court should ask

questions to elicit the following information:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he or she has the right to trial by jury?
>
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> (5) Is the defendant aware of the permissible range or sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment.[8]  In **Commonwealth. v. Yeomans**, 24 A.3d

1044 (Pa. Super. 2011), this Court explained:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences.  This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea.  Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

**Yeomans**, 24 A.3d at 1047 (Pa. Super. 2011) (citation omitted).

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies.  A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at

---

[8] The Comment also includes a seventh question, which is applicable only when a defendant pleads guilty to murder generally.

his plea colloquy. . . . [A] defendant who elects to plead guilty has a duty to answer questions truthfully.

*Id.* "The law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." ***Commonwealth v. Yager***, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) (citations and internal quotation marks omitted).

Instantly, our review of the written questionnaire and oral (on-the-record) colloquy, both quite extensive, does not reveal any grounds for challenging the validity of Appellant's plea agreement. ***See*** Guilty Plea Questionnaire, 4/11/16, at 1-10; N.T. Guilty Plea, 4/11/16, at 3-12. At the time of the colloquy, Appellant was 35 years old, had obtained a GED, and affirmed that he was able to read, write and understand English. Appellant denied being under the influence of drugs or alcohol or taking any medication in the last 24 hours. Appellant agreed to the Commonwealth's facts supporting the listed charges as contained in the affidavit of probable cause attached to the criminal complaint. N.T. Guilty Plea, 4/11/16, at 9-11. With respect to his BAC relevant for the various DUI offenses, Appellant stated that it was 0.213%. *Id.* at 9 (affirming that his BAC was 0.213%). Appellant agreed that his counsel told him the elements of each crime listed and that the Commonwealth had to prove each of them. Appellant further stated that no one promised or threatened him to plead guilty. He affirmed that he was pleading guilty on his own volition and that he understood the terms and consequences of doing so. In particular, Appellant agreed that he understood

- 10 -

the consequences of relinquishing his right to a trial by a judge or a jury. Appellant agreed that by pleading guilty he also was giving up his pretrial rights. *See* Guilty Plea Questionnaire, 4/11/16, at 5-6 (consenting to sacrificing his right to file pretrial motions, including a motion to suppress). Further, Appellant agreed that at trial he would be presumed innocent until proven guilty by the Commonwealth beyond a reasonable doubt. Critically, Appellant also agreed that he was "satisfied with the advice and service" of his counsel. *Id.* at 8. He agreed that his counsel left "the final decision to [him]" and that he decided for himself to plead guilty. *Id.* He agreed that he did not have any complaints about how his counsel represented him. *Id.* Finally, Appellant once again affirmed that he committed each crime for which he was pleading guilty and that his decision to plead guilty was final. *Id.*

Based upon our review of the record, Appellant's claim that his guilty plea was involuntary, unintelligent, or unknowing lacks merit, as it was belied by his written questionnaire and oral colloquy. As stated, Appellant is bound by the statements he made at the time of his guilty plea. *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (A defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pleaded guilty). Accordingly, Appellant is not entitled to relief.[9]

---

[9] This Court may affirm a PCRA court's decision on any grounds if the record supports it. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

Order affirmed.

Judge Olson joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2019

---

Given our conclusion that Appellant's guilty plea was valid, we need not address whether counsel was ineffective for failing to file pretrial motions to exclude evidence of his BAC level.