J-S17004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT LOUIS WINTON | |
| Appellant | No. 1364 MDA 2020 |

Appeal from the PCRA Order Entered October 12, 2020
In the Court of Common Pleas of the 17th Judicial District
Snyder County Branch
Criminal Division at No.: CP-55-CR-0000404-2018

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT WAYMAN-LOUIS WINTON | |
| Appellant | No. 1365 MDA 2020 |

Appeal from the PCRA Order Entered October 12, 2020
In the Court of Common Pleas of the 17th Judicial District
Snyder County Branch
Criminal Division at No.: CP-55-CR-0000324-2018

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED SEPTEMBER 22, 2021**

Appellant Robert Louis Winton appeals from the October 12, 2020 orders

of the Court of Common Pleas of the 17th Judicial District, Snyder County

_____

[*] Retired Senior Judge assigned to the Superior Court.

Branch ("PCRA court"), which denied his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. PCRA counsel has filed a no-merit letter and petition to withdraw under *Turner*/*Finley*.[1] Upon review, we affirm and grant the petition to withdraw.

On July 18, 2018, Appellant was charged with possession of a prohibited offensive weapon (brass knuckles) at docket 324-2018.[2] On October 17, 2018, Appellant was charged at docket 404-2018 with aggravated assault, simple assault, criminal mischief and harassment in connection with a violent incident that occurred at Snyder County Prison.[3] During this incident, a prison guard sustained injuries and prison property was damaged. On January 4, 2019, Appellant pled guilty to the prohibited offensive weapon charge at docket 324-2018 and aggravated assault at docket 404-2018.[4] On March 5, 2019, the trial court sentenced Appellant to 8 to 16 years in prison for aggravated assault and a concurrent 6 to 60 months' term for the prohibited offensive weapon charge. Appellant did not file any post-sentence motions or a direct appeal.

---

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[2] 18 Pa.C.S.A. § 908(a).

[3] 18 Pa.C.S.A. §§ 2702(a)(2), 2701(a)(2), 3304(a)(5), and 2709(a)(1), respectively.

[4] Appellant also pled guilty to crimes charged at several other dockets that are not before us on this appeal.

On November 25, 2019, Appellant *pro se* filed a PCRA petition, alleging ineffective assistance of counsel. PCRA court appointed counsel, who filed an amended petition. PCRA counsel repeated allegations of ineffective assistance of counsel. In support, PCRA counsel alleged that Appellant has a "low IQ," and that plea counsel failed to request "a competency evaluation." Amended PCRA Petition, 2/24/20, at ¶¶ 7-10. PCRA counsel claimed that, because of plea counsel's ineffective assistance, Appellant entered into the guilty pleas involuntarily.

On October 12, 2020, the PCRA court conducted a hearing, at which Appellant and his plea counsel, Attorney Brian Ulmer, testified. Following the hearing, the PCRA court denied Appellant relief. Appellant timely appealed. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

On March 8, 2021, PCRA counsel filed an **Anders**[5] brief, raising a single issue for our review. "Whether the trial court erred/abused its discretion when it denied [Appellant's] petition for post conviction relief?" **Anders** Brief at 7. On the same day, counsel filed in this Court an application to withdraw as counsel.

Before we may consider this issue, we must address whether PCRA counsel has met the requirements of **Turner**/**Finley**. For PCRA counsel to withdraw under **Turner**/**Finley** in this Court:

_____

[5] **Anders v. California**, 386 U.S. 738 (1967).

- 3 -

> (1) PCRA counsel must file a no-merit letter that details the nature and extent of counsel's review of the record; lists the appellate issues; and explains why those issues are meritless.
>
> (2) PCRA counsel must file an application to withdraw; serve the PCRA petitioner with the application and the no-merit letter; and advise the petitioner that if the Court grants the motion to withdraw, the petitioner can proceed *pro se* or hire his own lawyer.
>
> (3) This Court must independently review the record and agree that the appeal is meritless.

*See Commonwealth v. Widgins*, 29 A.3d 816, 817-18 (Pa. Super. 2011) (citing or quoting *Turner*, *Finley*, *Commonwealth v. Pitts*, 981 A.2d 875 (Pa. 2009), and *Commonwealth v. Friend*, 896 A.2d 607 (Pa. Super. 2008), *overruled in part by*, *Pitts*).

We find that PCRA counsel has substantially complied with *Turner*/*Finley*. PCRA counsel has petitioned for leave to withdraw and filed an *Anders* brief, which we accept in lieu of a *Turner*/*Finley* no-merit letter.[6] Finally, PCRA counsel informed Appellant of his right to hire a new lawyer or file a *pro se* response.

We now turn to this appeal to determine whether it is indeed meritless. "On appeal from the denial of PCRA relief, our standard of review requires us to determine whether the ruling of the PCRA court is supported by the record

---

[6] *Anders* sets forth the requirements to withdraw on direct appeal, which are more stringent than the *Turner*/*Finley* requirements that apply on collateral appeal. *See Widgins*, 29 A.3d at 817 n.2. "Because an *Anders* brief provides greater protection to a defendant, this Court may accept an *Anders* brief in lieu of a *Turner*/*Finley* letter." *Id.*

and free of legal error." **Widgins**, 29 A.3d at 819. As this Court has explained:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

When a petitioner asserts an ineffectiveness claim, he is entitled to relief if he pleads and proves that prior counsel rendered ineffective assistance of counsel. 42 Pa.C.S.A. § 9543(a)(2)(ii). "To prevail on an [ineffectiveness] claim, a PCRA petitioner must plead and prove by a preponderance of the evidence that (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for acting or failing to act; and (3) the petitioner suffered resulting prejudice." **Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 780 (Pa. Super. 2015) (*en banc*). "A petitioner must prove all three factors of the "**Pierce**[7] test," or the claim fails." **Id.** Put differently, "[t]he

---

[7] **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).

- 5 -

burden of proving ineffectiveness rests with Appellant." ***Commonwealth v. Chmiel***, 889 A.2d 501, 540 (Pa. 2005).

Instantly, Appellant's principal contention is that Attorney Ulmer was ineffective in failing to request a competency hearing for Appellant who labored under mental duress when he pled guilty. Relatedly, Appellant suggests that his counsel informed him that he would face county jail if he pled guilty.

Based upon our review of the record herein, Appellant's claim is without merit. At the PCRA hearing, Attorney Ulmer credibly explained why he did not request a competency hearing.

> [W]hen I would meet with him, [Appellant] was by no means terribly sophisticated about things, but he would be able to comprehend the basics. He understood the functions of a judge and a jury. He knew what my role was. He knew the process of each role. Um, when we talked about the offenses, he – and I would ask him, Do you understand? Now, admittedly I would read the information to see what he is charged with and try to put it in layman's terms. But when I asked him, Do you understand the offense, I would get an answer in the affirmative. So based on what I dealt with in the past in attempts to get folks to – to have it be said that they lack capacity, he wasn't hitting those marks. He knew what was going on. In addition, he was asked questions about things. And there were even a couple times that he brought up things that to me reflected that he knew how things were going and he knew potential consequences.
>
> . . . .
>
> Even the location of it being in Snyder County. He knew, as well, that the allegations of stabbing a prison guard was very, very serious and it could have ramifications in that way. I know he was worried about the setting even being the appropriate one for him.

- 6 -

N.T. Hearing, 10/12/20, at 34-36. Attorney Ulmer testified that Appellant assisted him with case preparation and that he was trying to get Appellant into treatment court, but ultimately was unsuccessful because of Appellant's assault of a prison guard. *Id.* at 36. He further testified that he reviewed with, and read to, Appellant the written guilty plea colloquy. *Id.* at 36-37. According to Attorney Ulmer, Appellant not only understood the consequences of pleading guilty, he also did not assert his innocence. *Id.* at 40. On the contrary, Attorney Ulmer testified that Appellant admitted to the commission of the charged offenses. *Id.* Attorney Ulmer recalled that Appellant gave a "genuine apology" to the prison guard at sentencing. *Id.* at 41.

The PCRA court also noted on the record its extensive past dealings with Appellant over the last decade, from the time Appellant was in the juvenile system, and dismissed Appellant's testimony regarding his incompetency as "extremely self-serving." *Id.* at 50. The court found Attorney Ulmer's testimony credible. *Id.* at 54. Additionally, the court noted in its opinion that it had "lengthy engagements with [Appellant]" throughout various proceedings. Trial Court Opinion, 5/22/20, at 3. In specific, the court noted that "[a]t no time did [Appellant] display any signs or concerns regarding competency or lack of understanding." *Id.* Accordingly, we conclude that the PCRA court did not err in concluding that plea counsel was not ineffective when he failed to request a competency evaluation for Appellant.[8] ***Commonwealth***

---

[8] As an appellate court, we must defer to the PCRA court's credibility determination. **See *Ford*, *supra*.**

- 7 -

*v. Petterson*, 49 A.3d 903, 915 (Pa. Super. 2012) (There is no abuse of discretion in a trial court's decision not to order a competency evaluation of a defendant where the judge had ample opportunity to observe defendant), *appeal denied*, 63 A.3d 776 (Pa. 2013).

To the extent Appellant argues that his guilty pleas were involuntary, such argument likewise lacks merit. "In the context of a plea, a claim of ineffectiveness may provide relief only if the alleged ineffectiveness caused an involuntary or unknowing plea." *Commonwealth v. Orlando*, 156 A.3d 1274, 1281 (Pa. Super. 2017) (citations omitted); *see Commonwealth v. Johnson*, 875 A.2d 328, 331 (Pa. Super. 2005) (explaining that when asserting a claim of ineffectiveness of counsel in the context of a guilty plea, a defendant must show that plea counsel's ineffectiveness induced him to enter the plea), *appeal denied*, 892 A.2d 822 (Pa. 2015). To be valid, a plea must be voluntary, knowing, and intelligent. *Commonwealth v. Persinger*, 615 A.2d 1305, 1307 (Pa. 1992). To ensure these requirements are met, Rule 590 of the Pennsylvania Rules of Criminal Procedure requires that a trial court conduct a separate inquiry of the defendant before accepting a guilty plea. It first requires that a guilty plea be offered in open court. The rule then provides a procedure to determine whether the plea is voluntarily, knowingly, and intelligently entered. As the Comment to Rule 590 provides, at a minimum, the trial court should ask questions to elicit the following information:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range or sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, Comment.[9]  In **Commonwealth. v. Yeomans**, 24 A.3d

1044 (Pa. Super. 2011), this Court explained:

In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences.  This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea.  Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

**Yeomans**, 24 A.3d at 1047 (Pa. Super. 2011) (citation omitted).

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies.  A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy. . . .  [A] defendant who elects to plead guilty has a duty to answer questions truthfully.

---

[9] The Comment also includes a seventh question, which is applicable only when a defendant pleads guilty to murder generally.

*Id.* "The law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily and intelligently made." **Commonwealth v. Yager**, 685 A.2d 1000, 1004 (Pa. Super. 1996) (*en banc*) (citations and internal quotation marks omitted).

Here, our review of the written and oral colloquies reveals that Appellant's ineffectiveness claim lacks merit. As the trial court aptly explained:

> During [Appellant's] guilty plea, the [c]ourt inquired as to whether [Appellant] was taking any type of medication and specifically inquired: "Are you aware of anything that would interfere with your ability to understand what we're doing today?" [Appellant] responded: "Yes. Wait, no." The [c]ourt reviewed the offenses with [Appellant], the grading, and possible sentences. The District Attorney gave the factual basis for the pleas. The [c]ourt was then handed a seven-page guilty plea colloquy. The [c]ourt verified that [Appellant] initialed and signed the form and then inquired: "Do you understand everything that's in this form especially the rights you're giving up by entering a plea?" [Appellant] responded: "Yes." The [c]ourt then reviewed the plea agreement with [Appellant] and verified his understanding of the plea agreement. The [c]ourt specifically asked [Appellant]: "Are you in agreement with your plea agreement?" [Appellant] responded: "Yes." The [c]ourt then inquired as to whether [Appellant] committed the crimes to which he was pleading guilty and he responded that he did. The [c]ourt then asked whether [Appellant] was satisfied with his legal representation at the time and he indicated that he was.

Trial Court Opinion, 5/22/20, at 2. Additionally, at the PCRA hearing, the court noted that it reviewed the written guilty plea colloquy with Appellant.

> The [c]ourt asked, "Can you read, write, and understand English?" He responded, "Yes." I asked, "Are you on medication?" He said,

- 10 -

> "Seizure medications." I asked him if he took his medication in compliance with the physician's instructions. He responded, "Yes." I asked him, "Does the medication affect your ability to understand what we're doing here," and he said, "No." I asked him, "Are you aware of anything that would interfere with your ability to understand what we're doing today?" He initially said, "Yes," but then corrected himself and said, "wait. No." That's a clear understanding of the question. I went over the colloquy with him. I went over his relationship with Attorney Ulmer. I went over the plea agreement in detail with him. On page seven, "So as a minimum you would be sent to state prison somewhere between six and nine and a half years." And I correct it. "No. Eight and a half years. Do you understand that," and he responded, "Yes." . . . . I told him the maximums that I could impose would be 20 years and he understood that. I asked him if he was in agreement with his plea agreement and whether he understood it. I asked him if he understood the nature of the charges and the possible penalties. When asked, "Whose decision is it to plead guilty," it was indicated, "Mine."

N.T. Hearing, 10/12/20, at 51-52. Thus, Appellant's claim that his guilty plea was involuntary, unintelligent, or unknowing lacks merit, as it was belied by his written questionnaire and oral colloquy. As mentioned, Appellant acknowledged, among other things, that it was his decision, free from coercion, to plead guilty; he was not under the influence of medication or drugs; and he was advised of the sentencing range and understood the same. He now cannot be permitted to undo his bargain on a bald allegation that trial counsel did not request a competency evaluation or that Appellant was under the influence of medication. Appellant is bound by the statements he made at the time of his guilty plea. *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (A defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing

the plea that contradict statements made when he pleaded guilty). Accordingly, Appellant's ineffectiveness claim lacks merit.

Finally, Appellant does not obtain relief on his allegation that Attorney Ulmer promised him a county sentence. At the PCRA hearing, Attorney Ulmer credibly testified that he advised Appellant of a possible maximum sentence that the court could impose following a guilty plea. N.T. Hearing, 10/12/20, at 43-44. Attorney Ulmer, however, specifically denied that he ever told Appellant that Appellant would receive a county sentence. *Id.* at 44. ("No. That would have been – that would have cruel. . . . . There's absolutely – once there was a claim that he stabbed a prison guard at the county jail, you're not getting a county sentence."). Attorney Ulmer testified that, several times prior to sentencing, he disabused Appellant of the notion that Appellant would receive a county sentence. *Id.* The PCRA court found Attorney Ulmer's testimony credible and we have no reason to question that determination. Appellant's claim lacks merit. No relief is due.

Upon conducting our independent review of the record, we conclude that this appeal is in fact meritless.

Orders affirmed.  Petition to withdraw granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2021