J-S43019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMANI RHEDRICK | : | |
| | : | |
| Appellant | : | No. 1201 EDA 2024 |

Appeal from the PCRA Order Entered April 3, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No:  CP-46-CR-0000079-2020

BEFORE:  BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 12, 2025**

Appellant, Armani Rhedrick, appeals from the order of the Court of Common Pleas of Montgomery County dismissing his petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  Upon review, we affirm.

On October 13, 2021, a jury convicted Appellant of first-degree murder and related offenses for the fatal shooting of his neighbor, Otis Harris.  He was sentenced to mandatory life imprisonment.  This Court affirmed Appellant's judgment of sentence on January 18, 2023.  ***See Commonwealth v. Rhedrick***, No. 2463 EDA 2021, unpublished memorandum (Pa. Super. filed January 18, 2023).  No further appeal was taken.

Appellant filed a *pro se* PCRA petition on May 26, 2023, and counsel was appointed who filed a motion to withdraw, along with a no-merit letter.  The PCRA court "directed PCRA counsel to provide an analysis of the issue of

whether trial counsel was ineffective in failing to request a heat of passion jury instruction in the context of Appellant's version of events solely relying on the evidence of record." Trial Court Opinion, 5/23/24, at 4. Thereafter, Appellant filed an amended PCRA petition alleging that trial counsel was ineffective for failing to request a heat of passion jury instruction. At trial, Appellant had presented an imperfect self-defense claim, arguing that he was guilty of voluntary manslaughter. The trial court instructed the jury on imperfect self-defense, and that theory was rejected by the jury when it found Appellant guilty of first-degree murder.[1]

On February 21, 2024, the PCRA court issued a notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant did not file a response, and his petition was dismissed on April 4, 2024. This appeal followed. Appellant raises a sole issue for our review:

> The PCRA court erred by denying the appellant's request for a new trial or an arrest of judgment due to the ineffectiveness of trial counsel's failure to request the [trial court] to instruct the jury on the issue of heat of passion.

Appellant's Brief, at 4.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *See e.g., Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). "The PCRA court's findings will not be disturbed unless there

---

[1] The verdict slip included the lesser offenses of third-degree murder and voluntary manslaughter.

is no support for the findings in the certified record." ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020) (internal citations omitted).

Appellant contends that the PCRA court erred by denying his claim that trial counsel was ineffective for failing to request a heat of passion jury instruction. Appellant's Brief, at 9.

In Pennsylvania, counsel is presumed to have rendered effective assistance. ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. ***Id.*** If a petitioner fails to satisfy any one of the three prongs, the claim fails. ***Id.*** "Counsel will not be found ineffective for failing to raise a meritless claim." ***Commonwealth v. Brown***, 196 A.3d 130, 151 (Pa. 2018).

Here, the PCRA court found that Appellant's underlying claim lacked arguable merit. "Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." ***Commonwealth v. Stultz***, 114 A.3d 865, 880 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1201 (Pa.

2015) (quotation marks and citations omitted). Appellant nevertheless contends that his claim has arguable merit "because he was sufficiently provoked by the violent attack on his person within his own home[,]" warranting a heat of passion instruction. Appellant's Brief, at 10.

Voluntary manslaughter is defined in our Crimes Code as follows:

(a)     General rule. – A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

  (1)     the individual killed; or

  (2)     another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

(b)     Unreasonable belief killing justifiable. – A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503. Colloquially, subsection (a) is called "heat of passion" voluntary manslaughter, and subsection (b) is referred to as "imperfect self-defense." *See Commonwealth v. Sanchez*, 82 A.3d 943, 979 (Pa. 2013).

A heat of passion instruction should be granted only "where the offense is at issue at the evidence would support such a verdict." *Id.* "[T]he evidence would have had to demonstrate that, at the time of the killing, appellant acted under a sudden and intense passion resulting from serious provocation by the victim." *Id.* (citation omitted). Thus, we must view the record in its entirety

to determine whether such evidence would support a finding that a defendant acted in the heat of passion. *See, e.g. Commonwealth v. Cash*, 137 A.3d 1262, 1271 (Pa. 2016).[2]

"'[S]udden and intense passion' encompasses emotions such as anger, rage, sudden resentment, or terror that renders the mind incapable of reason." *Commonwealth v. Arrington*, 86 A.3d 831, 850 (Pa. 2014) (citation omitted). Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test:

> whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection.

> To reduce an intentional blow, stroke, or wounding resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool, placing the defendant beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting – if there be provocation without passion, or passion without sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

*Commonwealth v. Hutchinson*, 25 A.3d 277, 314-15 (Pa. 2011) (citations omitted).

_____

[2] In *Cash*, appellant contended that the trial court erred in refusing to instruct the jury on heat of passion voluntary manslaughter. *Cash*, 137 A.3d at 1271. During trial, appellant testified that that he killed the victim "out of passion and fear" after the victim provoked him 15 to 30 minutes prior. *Id.* at 1272. Our Supreme Court rejected the argument, nothing that appellant's own testimony that there were 15 to 30 minutes between the alleged provocation and the shooting showed that he was capable of cool reflection. Additionally, the Court said that the surveillance videos did not show appellant "acting in a fit of passion, but, rather, was carefully deliberating" his next move. *Id.*

Here, we find that the PCRA court did not err in dismissing Appellant's PCRA petition. As explained below, there is no arguable merit to Appellant's contention that he acted in the heat of passion at the time of shooting, such that a jury instruction on that theory should have been given.

The shooting occurred in a housing development. The front door of where the victim was residing was across the street from the walkway that led to Appellant's back door. Appellant initially explained in his statement to police on September 24, 2019 (a day after the shooting) that his fiancé woke him up and said someone was knocking on the door. Commonwealth's Exhibit 82, Appellant's Statement, at 2. He looked through the peephole and saw two men that he knew – the victim and another man he recognized, but did not know his name (later identified as Rayshown McKay). *Id.* Appellant opened the door, and the victim began punching him while Rayshown held the screen door open. *Id.* He could see the outline of a gun in Rayshown's waistband. *Id.* Appellant said the victim threatened to kill him. *Id.* Appellant's fiancé began screaming and he was able to push the victim off him. *Id.*

Appellant got his shotgun out of the closet, loaded it and chased after the victim and Rayshown. *Id.* at 3. He saw Rayshown get into the passenger side of a grey Kia SUV and drive off. *Id.* The victim was "sitting there" and told Appellant that it "wasn't supposed to be that way." *Id.* Appellant then shot the victim because "that showed me he was still going to kill me, so as a man, I had to take out the aggressor, I shot him." *Id.* He said that the victim

- 6 -

was not armed and that he "shot [the victim] because [the victim] would let his friend get me [kill him]." ***Id.***

Appellant's testimony at trial was inconsistent with the statement he provided to police. Appellant testified that on September 22, 2019, the night prior, he went grocery shopping and then stayed in with his fiancé and their newborn child. N.T. Trial Day 3, 10/13/21, at 52. The next morning, Appellant's fiancé woke him up because someone was knocking at the door. ***Id.*** He went downstairs, looked through the peephole and saw two men – Rayshown with a gun and the victim. ***Id.*** Rayshown and the victim attacked him and said they were going to kill him. ***Id.*** at 53.

Appellant broke free and ran to get his gun out of the closet. ***Id.*** He said Rayshown pointed a gun at him and "started to pull the slide back because it wasn't working." ***Id.*** Once Rayshown and the victim saw Appellant with his gun, they ran away. ***Id.*** Appellant chased after them because he "wanted to stop them [and] call the police." ***Id.*** Appellant was unable to catch Rayshown, but stopped the victim. ***Id.*** As Appellant racked his shotgun, he told the victim to turn around and that he was calling the police. ***Id.*** When Appellant went to reach for his phone, the victim "pulled a gun out and . . . tried to point it in my direction, that's when I fired my shotgun." ***Id.***

Appellant testified further that, after shooting the victim, he thought Rayshown might have gone to gather more armed individuals to return for revenge. ***Id.*** at 53-54. Appellant then ran home and told his fiancé that they were leaving because they were not safe. ***Id.*** at 54. He wrapped the shotgun

in a blanket, walked to his vehicle, put the shotgun in the trunk, drove back to his house to pick up his fiancé and child, and left for his mother's home in Philadelphia, where he was apprehended the next day. *Id.* at 54-55.

In attempting to explain the inconsistencies, Appellant claimed his statement was "incomplete" and that police would not let him fix the mistakes by starting over. *See* N.T. Trial Day 3, 10/13, 21, at 83-122.

The Commonwealth presented the testimony of the victim's nephew, Rayshown, to establish Appellant's motive for the shooting the victim. Rayshown testified that on September 22, 2019, the night prior to the shooting, he overhead Appellant "talking bad" about him. N.T. Trial Day 1, 10/11/21, at 105. When Rayshown awoke on September 23, 2019, he decided to go to Appellant's house to fight. *Id.* at 104. He went alone and unarmed. *Id.* at 105-106. He knocked on Appellant's door and when Appellant answered, started punching him. *Id.* at 106. The fight continued into Appellant's living room. *Id.* at 107. Rayshown ran out of the house when he heard Appellant tell someone to "go get the gun." *Id.* at 107-08.

Rayshown went to his house across the street and entered in the back door because the front door was locked. *Id.* at 108. His entrance awoke his uncle, the victim, who was sleeping on the living room floor. *Id.* at 109. Rayshown told the victim what happened at Appellant's house and then went upstairs to clean blood off his face. *Id.* While Rayshown was still upstairs, the victim walked outside. *Id.* at 109-10. Rayshown ran back downstairs to get his gun, but it was too late – he heard gunshots. *Id.* at 110.

Rayshown's testimony was corroborated by Grace Kennon, the victim's girlfriend. She testified that Rayshown told her, days after the murder, that he went to Appellant's to fight, left and went back to his house and woke up the victim, who was killed shortly after walking outside. *See* N.T. Trial Day 2, 10/12/21, at 217-19.

We agree with the PCRA court that Appellant's underlying claim of ineffectiveness lacks arguable merit. The only evidence Appellant had that would even remotely tend to support the giving of a "heat of passion" instruction was his trial testimony. Even considering his trial testimony in isolation, it would not establish a heat of passion defense. Similar to *Cash*, Appellant's own account showed that he was behaving rationally when he shot the victim, and that after his confrontation with the victim, he had a cooling off period prior to the shooting. As in *Cash*, the trial court also reviewed the record and determined there was no evidence to support a finding that Appellant acted in a heat of passion. The approach taken by the trial court, approved by the Supreme Court, ultimately held that the evidence, as a whole, must be considered when determining whether a heat of passion instruction is warranted. *Cash, supra.*

Appellant claims that he was sufficiently provoked by the victim when he broke into his home. Yet, after chasing the victim and Rayshown out of his home and into the street, Appellant decided to run after them to make a "citizen's arrest." *See* N.T. Trial Day 3, 10/13/21, at 67. It was only at that moment when, in Appellant's account, the victim reached for a weapon, that

Appellant opened fire. Even assuming the shooting unfolded in the manner that Appellant described, it would not establish that Appellant was inflamed or impassioned to the extent that his mind was incapable of cool reflection. A heat of passion instruction was therefore unwarranted and would not have been appropriate in this case.[3]

Additionally, a heat of passion instruction would have only been appropriate if the evidence had shown that the *victim* had provoked Appellant. Other than Appellant's own testimony (which conflicted with his initial statement to police), there was no evidence that the victim had provoked Appellant just prior to the shooting. ***See e.g., Commonwealth v. Ragan***, 743 A.2d 390, 397 (Pa. 1999) ("Absent evidence of negligence or accident, a heat of passion voluntary manslaughter charge is improper where the victim is not the person who provoked the defendant."). At most, the evidence indicated that Rayshown provoked Appellant. As such, a heat of passion jury

_____

[3] Moreover, Appellant's trial testimony describing the victim's threat conflicted with his own pre-trial statement to police and was refuted by several eyewitnesses. In addition to Rayshown's testimony that the victim was not involved in the fight, Tahisha McKay, with whom the victim and Rayshon were both residing, testified that the victim was asleep on her living floor until minutes before he was killed. N.T. Trial Day 1, 10/11/21, at 147-49. An eyewitness, I.S., who was 6 years old at the time, also testified that the man with dreadlocks (the victim) appeared to be unarmed. N.T. Trial Day 2, 10/12/21 at 36-37, 39.

The physical evidence further refuted Appellant's claim that the victim was armed. Detective Terrance Lewis of the Montgomery County Detective Bureau testified that the victim was found facedown on the sidewalk, with his arms folded up under his upper torso, and clutching a Bic lighter in his hand. ***Id.*** at 175. No weapon was ever seen on or near the victim. ***Id.*** at 185.

instruction was not warranted, and trial counsel was not required to request a jury instruction that was not supported by the evidence. As Appellant's ineffectiveness claim has no arguable merit, we need not address the remaining prongs necessary to establish counsel's ineffectiveness. ***See Orlando, supra.*** Thus, we conclude that the PCRA court did not err in finding Appellant's ineffectiveness claim lacked arguable merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2025