J-S11034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
          v.                   :
                               :
                               :
                               :
DAVID L. WALKER, JR.           :
                               :
          Appellant            :   No. 693 WDA 2023

Appeal from the PCRA Order Entered May 8, 2023
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000007-2020

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: May 13, 2025**

David L. Walker, Jr. ("Walker") appeals from the order denying his first

petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In 2020, a state police trooper received a tip from a credible confidential

informant that Walker was staying at a hotel in Indiana County and was in

possession of a large amount of drugs and money.  The trooper obtained a

search warrant and he and other law enforcement officers proceeded to the

hotel room.  After knocking on Walker's hotel room door, the law enforcement

officers heard what sounded like footsteps running through the room, and

then a toilet flushing.  Walker eventually opened the door and was taken into

custody.  The law enforcement officers then executed the search warrant and

found money and Walker's cell phone in the room.  They also removed the

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

toilet from the floor, emptied it of water, and found a significant amount of drugs which had been caught in the trap of the toilet, presumably when Walker attempted to flush the toilet moments before. Specifically, the troopers recovered a bag of marijuana, stamp bags containing 5.8 grams of fentanyl, and 22.6 grams of crack cocaine. The troopers then obtained a search warrant for Walker's phone and discovered his communications for illicit drug transactions and photographs of drugs. Police thereafter charged Walker with possession with intent to deliver a controlled substance ("PWID"), criminal use of communication facility, possession of a controlled substance, and possession of drug paraphernalia. The trial court appointed counsel, but then permitted that counsel to withdraw and appointed Milton Raiford, Esquire ("Attorney Raiford") as replacement counsel.

The PCRA court summarized the ensuing procedural history as follows:

> A non[-]jury trial was scheduled in this matter . . . on January 4, 2022, however, instead of . . . trial, [Walker] and the Commonwealth finalized a negotiated plea agreement[.] [P]ursuant to that agreement, [Walker] entered a guilty plea to [PWID] (<1 gram of fentanyl) (2nd or subsequent offense). [In exchange for Walker's plea, the Commonwealth agreed to reduce the amount of drugs found in Walker's hotel room (*i.e.*, 5.8 grams of fentanyl, 22.6 grams of crack cocaine, and marijuana) to less than one gram of fentanyl, and to dismiss all remaining charges against Walker. In connection with the plea agreement, Walker completed written and oral colloquies, and during the court's oral colloquy, Walked admitted that he committed PWID.] Sentencing was scheduled for April 25, 2022; on that day [Walker] was sentenced to incarceration . . . for a period of not less than [two] years nor more than [four] years. Credit for time served was granted and the sentence was to run concurrently with any sentence imposed prior to the entry of the order.

- 2 -

[Following a procedural sequence not herein relevant, the court determined that Attorney Raiford abandoned Walker for the appeal process, and] directed that Mark Bolkovac, Esquire, was to be appointed as appellate counsel for [Walker]. Attorney Bolkovac subsequently withdrew his appearance . . .. However, prior to withdrawing his appearance, Attorney Bolkovac assisted [Walker] with withdrawing his [direct] appeal with the Superior Court[ on September 21, 2022].

[Walker] then filed a document with the [PCRA] court requesting the appointment of counsel. The court granted this motion, and [appointed] Andrew Skala, Esquire ("Attorney Skala") . . . to represent [Walker]. [On January 6, 2023, . . . Attorney Skala, . . . submitted the . . . PCRA petition . . . currently before the court for consideration.[2]

Through the pending PCRA petition, [Walker] alleges that [Attorney] Raiford . . . induced [him] to plead guilty to the charge of [PWID]. In support of this contention, [Walker] avers that Attorney Raiford informed him that, due to the plea bargain, [Walker] would not be sentenced to a term of incarceration, and that he would receive a sentence of probation or house arrest. [Walker] further avers that he told Attorney Raiford that he was innocent of the charge of [PWID]. [The PCRA court scheduled an evidentiary] hearing . . . on the petition . . . .

* * * *

At the [evidentiary] hearing . . ., the court heard testimony from . . .: [Walker]; Noelle Miller, fiancée of [Walker]; Jill Brown, family friend of [Walker]; Brenda Sledge, mother of [Walker]; and [Attorney] Raiford. . .. [Walker] testified . . . that on . . . the day of the anticipated non[-]jury trial, Attorney Raiford informed him that the plea presented was a suitable offer. [Walker] averred and continued to reiterate that Attorney Raiford informed him

_____

2 Walker's PCRA petition is timely because he filed it within the one-year jurisdictional time limit of the PCRA. *See* 42 Pa.C.S.A. § 9545(b)(1) (requiring any PCRA petition to be filed within one year of the date on which the judgment of sentence becomes final). Here, Walker's judgment of sentence became final on September 21, 2022, when he discontinued his direct appeal. He then had until September 21, 2023, in which to file a timely PCRA petition. Therefore, his petition filed on January 6, 2023, is timely.

several times that, if he entered the plea, there would be "no jail time." [Walker] stated that Attorney Raiford affirmatively told him that, in the worst-case scenario, [Walker] would be sentenced to six months of house arrest. [Walker] further indicated that he informed Attorney Raiford that he was innocent of the charges. Finally, [Walker] stated that if he would have known that he was receiving a period of incarceration, he would have made a motion to withdraw his guilty plea. These averments were repeated when [Walker] was called to present rebuttal testimony prior to the close of the hearing.

Noelle Miller, [Walker's] fiancée, took the stand [and] testified that she was present when [Walker] had a conversation with Attorney Raiford at a Pittsburgh Magisterial District Judge's Office; she also overheard several telephone conversations between [Walker] and Attorney Raiford, as the phone was on "speaker phone." Miller averred that Attorney Raiford indicated that if [Walker] entered a plea, he would not be incarcerated, but rather, he would be sentenced to nine months of house arrest, and, therefore, he needed to make arrangements with his employer.

Jill Brown, presented similar testimony; she stated that she was driving [Walker] to his sentencing hearing when he called Attorney Raiford. Brown stated that this call was placed using hands-free technology and that she was able to clearly hear the conversation. Brown explained that [Walker] made this call in order to confirm that nine months of house arrest was still the anticipated sentence. It was stated that Attorney Raiford responded to [Walker] in an affirmative nature by informing him that everything was "okay."

The testimony presented by [Walker's] mother, Brenda Sledge, was similar as well. Sledge testified that during conversations with Attorney Raiford, [he] indicated that [Walker] would not be receiving any jail time. Sledge explained that when she was told that [Walker] would not be receiving jail time, she assumed that it meant that he would be serving a sentence of house arrest. Sledge did note, however, that Attorney Raiford directed [Walker] to get his affairs in order prior to the sentencing date.

Attorney Raiford was then called by the Commonwealth. In his testimony, Attorney Raiford explained to the court that he did,

in fact[,] inform [Walker] of the sentencing guidelines applicable in this matter. While Attorney Raiford testified that he maintained a hopeful mindset regarding the possible sentences, and he averred that he balanced this approach by informing [Walker] that all sentencing decisions were ultimately going to be made by the court. Attorney Raiford maintained that he never told [Walker] that there would be "no jail time" associated with his sentence.

PCRA Court Opinion, 5/8/23, at 1-7 (unnecessary capitalization omitted, footnote added).

On May 8, 2023, the PCRA court entered an order denying the petition, along with an accompanying opinion. Walker filed a timely notice of appeal,[3] and both he and the PCRA court complied with Pa.R.A.P. 1925.[4]

_____

[3] Attorney Skala prepared and filed a notice of appeal for Walker. However, Attorney Skala thereafter filed an application to withdraw as counsel, stating that Walker was unhappy with his performance and had requested the appointment of new counsel. This Court remanded for the PCRA court to determine whether Attorney Skala should be permitted to withdraw and whether substitute counsel should be appointed. The PCRA court complied, permitted Attorney Skala to withdraw, and appointed Timothy Burns, Esquire ("Attorney Burns") as substitute appellate counsel. Attorney Burns filed an appellate brief on Walker's behalf. Walker then filed numerous *pro se* letters which this Court forwarded to Attorney Burns. *See Commonwealth v. Jette*, 23 A.3d 1032 (Pa. 2011) (holding that "the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion"). However, given that in certain of his *pro se* filings, Walker had requested new counsel, this Court once again remanded the matter to the PCRA court to determine whether Attorney Burns should be permitted to withdraw and whether substitute counsel should be appointed. The PCRA court complied, permitted Attorney Burns to withdraw, and appointed Matthew Jaynes, Esquire as replacement appellate counsel.

[4] In *lieu* of authoring a Rule 1925(a) opinion, the PCRA court directed this Court to its opinion filed in connection with the order denying the PCRA petition.

Walker raises the following issue for our review:

> The trial court erred in denying [Walker's] PCRA petition, as [he] did not enter a plea in a knowing and voluntary manner, because [he] believed, based on false representations made to him by his prior counsel, that he would not receive any jail time as a result of his plea.

Walker's Brief at 4 (unnecessary capitalization omitted).

Our standard of review of an order denying a PCRA petition is well-settled:

> We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

The PCRA provides for relief when a conviction or sentence resulted from, in pertinent part, "(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent." 42 Pa.C.S.A. § 9543(a)(2)(iii). However, to be eligible for relief under this subsection, the petitioner must plead and prove his innocence of the offence to which he pleaded guilty. *See Commonwealth v. Lynch*, 820 A.2d 728, 731 (Pa. Super. 2003).

- 6 -

However, if the ineffective assistance of counsel caused the defendant to enter an involuntary or unknowing plea, the PCRA will afford the defendant relief under the section governing relief in cases of ineffective assistance of counsel. *See id*.; *see also Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002) (holding that allegations that counsel misadvised a criminal defendant in the plea process are properly determined under the ineffectiveness of counsel subsection of the PCRA not the section specifically governing guilty pleas). Notably, the section of the PCRA governing relief in cases of ineffective assistance of counsel does not require the petitioner to plead and prove his innocence. *See Lynch*, 820 A.2d at 731. Thus, we will proceed to review Attorney Raiford's performance to see whether it amounted to ineffective assistance of counsel that invalidated Walker's guilty plea. *See Hickman*, 799 A.2d at 140.

Our standard of review of an ineffectiveness claim is well-settled:

> To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 . . . (1984). . . . Accordingly, to prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the

petitioner must advance sufficient evidence to overcome this presumption.

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (some citations and quotation marks omitted).

A criminal defendant's right to effective counsel extends to the plea process. *See Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012). However, allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the petitioner to enter an involuntary or unknowing plea. *See id*. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *See id*. at 338-39. In this context, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013).

Importantly, "[a] defendant is bound by the statements which he makes during his plea colloquy." *Commonwealth v. Orlando*, 156 A.3d 1274, 1281 (Pa. Super. 2017). "As such, a defendant may not assert grounds for

withdrawing the plea that contradict statements made when he entered the plea." *Id*.

Walker contends that that Attorney Raiford induced him to plead guilty to PWID by promising him that, pursuant to the plea agreement, he would not be sentenced to a term of incarceration, and would instead receive a sentence of probation or house arrest. Walker further contends "that Attorney Raiford advised him that he was innocent of the charge." Walker's Brief at 10. Walker maintains that it was only due to this false information that he entered his guilty plea. Walker submits that he has satisfied the reasonable probability prong of the ineffectiveness test. He also emphasizes that each of his witnesses were consistent in their testimonies that Attorney Raiford advised him that he would not receive jail time for his guilty plea.

The PCRA court considered Walker's issue and determined that it lacked merit. The court reasoned:

> As noted above, the court received testimony from Attorney Raiford at the PCRA hearing. The court finds Attorney Raiford's testimony to be credible. Specifically, the court finds that Attorney Raiford did not advise [Walker] that he would not be incarcerated as a result of the plea. The court recognizes Attorney Raiford's extensive career in criminal defense, as well as his acknowledgement on the stand that he initially approaches each case with a hopeful perspective. While Attorney Raiford may have presented these hopes to [Walker], the court finds that Attorney Raiford also balanced or counteracted these hopes with the explanation that the trial judge makes the final determination as to the sentence imposed. As noted in the overview of the testimony presented at the [plea] hearing, Attorney Raiford also explained the sentencing guidelines to [Walker]. Consequently, the court finds that Attorney Raiford's assistance did not fall outside of the range of professionally competent assistance . . ..

Counsel duly advised [Walker] that all sentencing determinations were made by the court. In essence, this advice belies the claim that Attorney Raiford even possessed the ability to assure [Walker] that he would not serve any jail time upon entering the plea. It also is evident that Attorney Raiford's actions were not designed to impede [Walker's] interests. It was noted at the PCRA hearing that Attorney Raiford informed [Walker] that the plea was a "good plea," as the weight of the controlled substance was reduced and other charges were dropped as part of the plea agreement.

Specifically, the court turns to the transcript of the April 25, 2022, sentencing hearing to support the conclusion that [Walker] benefitted from the plea agreement. At the hearing, the court placed on the record an extended statement in which it was acknowledged that [Walker's] sentence was going to fall into the mitigated range of the sentencing guidelines:

> So[,] let's deal with the offense gravity score issue first. At the time of the entry of the plea it was discussed, placed on the record that the offense gravity score for the offense to which Mr. Walker pled guilty was an eight. Mr. Walker does have a prior record score of five. So[,] with an offense gravity score of eight, and a prior record score of five, the standard range is 27 to 33 [months in prison]. I believe that was Mr. Walker's understanding at the time the plea was entered. Now, the pre-sentence report was completed by the probation department, and as represented here by Attorney Clark, the offense gravity score is actually a nine. It appears that the reason for the misunderstanding or mistake that was made is that this particular offense is actually an offense that the commission on sentencing and the legislature actually reduced the offense gravity score from a nine to an eight, but this offense took place prior to the reduction. So[,] I believe that, procedurally, how the court must handle this is given the offense date, it is a nine. The guidelines are what they are, but what I would like to do is stay true to what the intent of the parties was here. So[,] if that puts my sentence into a mitigated range or a

> departure, then so be it, but that's where the fairness
> in this bargain must be struck.
>
> [N.T., 4/25/22, at 5-6]. The court then proceeded to sentence
> [Walker] to incarceration at a state [prison] for a period of not
> less than [two] years nor more than [four] years, which was a
> mitigated sentence.
>
> The final prong which must be addressed in examining the
> claim of ineffective assistance of counsel is whether or not
> [Walker] was prejudiced by the actions of defense counsel.
> Markedly, [Walker] did aver that, if not for the advisement of
> defense counsel, he would not have entered a plea. The court
> finds that this averment holds no merit. As mentioned above, the
> court believes that Attorney Raiford properly informed [Walker] of
> the risks of entering his plea as well as the realities of the
> sentencing guidelines. Ultimately, the court finds that defense
> counsel made no unwarranted representations to [Walker]. The
> record plainly supports this finding and [Walker's] claim of
> ineffectiveness must fail.

PCRA Court Opinion, 5/8/23, at 10-12 (unnecessary capitalization omitted).

The PCRA court further concluded that Walker failed to establish that Attorney Raiford possessed the intent to unlawfully coerce Walker into entering a plea. *See id*. at 13. The court noted that Walker offered no evidence detailing any actions or statements made by Attorney Raiford that suggested he had an underlying motive or aim to induce Walker's plea. *See id*. The PCRA court also found that Walker's respective written and oral colloquies provided him with the opportunity to identify any incidence of inducement, noting:

> On the day which [Walker] entered his plea, the court
> conducted a standard colloquy in order to confirm that the plea
> was being entered knowingly, voluntarily, and intelligently.
> During this colloquy, [Walker] asserted that the plea was fully
> explained to him and that he was entering it of his own free will:

Q. Now, the rights that you have, including your right to a trial, those rights cannot be taken from you. Have you been subjected to any force or threats to induce your plea today?

A. No, your Honor.

Q. Are you entering the plea of your own free choice?

A. Yes, your Honor.

Q. Has it been explained to you what it means to plead guilty, the possible consequences of entering the plea and the alternatives that are available to you, including your right to a trial?

A. Yes, your Honor?

Q. Now, the plea agreement has been set forth by Attorney Raiford and Attorney Clark. Are there any other deals or agreements that you're aware of or that you've been promised that have not been placed on the record?

A. No, your Honor.

Q. Sir, do you have any questions at all for me about your rights in this matter or about anything that we've discussed?

A. No, not at this moment.

[N.T., 1/4/23, at 6 (unnecessary capitalization omitted)].

The record clearly supports the conclusion that [Walker] entered a knowing, voluntary, and intelligent guilty plea. [Walker] confirmed that he was not threatened to enter the plea and that he was duly aware of the consequences of entering the plea. The court also observes that by engaging in this colloquy, [Walker] confirmed his understanding of the alternatives available to him and affirmed that no promises or acts of inducement remained unreported. As previously noted, this on-the-record colloquy stands supported by the written colloquy completed by [Walker] on January 4, 2022.

PCRA Court Opinion, 5/8/23, at 10-12 (unnecessary capitalization omitted).

Based upon our review, we conclude that the PCRA court's determination is supported by the record and free of error. The PCRA court credited Attorney Raiford's testimony and found that he did not make the alleged representation to Walker that he would receive no jail time if he pleaded guilty to PWID. The PCRA court further credited Attorney Raiford's testimony that he informed Walker of the guideline range applicable to PWID, and advised Walker that the sentencing court would decide what sentence to impose. In reaching these factual determinations, the PCRA court recognized Attorney Raiford's extensive career in criminal defense, and that his advice to Walker was within the range of competence demanded of attorneys in criminal cases.

Notably, the PCRA court did not find that Walker or his witnesses were credible, and specifically noted the discrepancies in their testimony. *See id*. at 7 (observing that whereas Walker "vehemently averred that Attorney Raiford assured him that he would only be serving **six months** house arrest[, i]n contrast, Noelle Miller and Jill Brown both testified that the period of house arrest allegedly identified by Attorney Raiford was **nine months**" (emphasis added)). The PCRA court found that Walker's credibility was further undermined by the notion that Miller and Brown were privy to Walker's

conversations with his counsel on such a vital point of his claim, yet they provided testimony differing from Walker's specific assertions. *See id*.

The PCRA court further noted that both the oral and written guilty plea colloquies support the conclusion that Attorney Raiford made no representation to Walker that he would receive no jail time upon entering his plea. During the oral guilty plea colloquy, Attorney Raiford informed the trial court that, as a result of the Commonwealth's agreement to lower the amount of drugs found in Walker's possession in exchange for his guilty plea, the standard range sentence for PWID would be correspondingly reduced from sixty to seventy-two months to a lesser range of twenty-seven to thirty-three months in prison. *See* N.T., 1/4/22, at 3. Further, the prosecutor specifically stated that "there is no agreement as far as sentencing is concerned." *Id*. at 4. Following these representations by Attorney Raiford and the prosecutor, the trial court stated: "the plea agreement has been set forth by Attorney Raiford and [the prosecutor.] Are there any other deals or agreements that you're aware of or that you've been promised that have not been placed on the record. *Id*. at 6. Walker responded, "No, your Honor." *Id*. (unnecessary capitalization omitted). Similarly, on the written guilty plea form, Walker affixed his initials to the page which indicated that he could receive a maximum prison sentence of fifteen years in prison for the PWID offense.[5]

---

[5] As indicated above by the PCRA court, this was Walker's second conviction for PWID, and due to his prior convictions, he had a prior record score of five.

- 14 -

*See* Written Guilty Plea Form, 1/4/22, at 2. Notably, the section of the written guilty plea form which was entitled "Terms of plea, if any" was left entirely blank. *See id*. Finally, the plea transcript reflects that, after the factual summary supporting the conviction for PWID was provided by the prosecutor, the trial court asked Walker if he admitted that he committed the offense and Walker replied, "Yes, I do." N.T., 1/4/22, at 8.

Based on the foregoing, we conclude that the record supports the PCRA court's determination that Walker failed to prove his claim that Attorney Raiford's ineffectiveness induced him to enter an involuntary, or unknowing plea of guilty, and further failed to prove that he is innocent of the crime to which he pleaded guilty. Accordingly, we affirm the order denying Walker's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/13/2025